# IN THE SUPREME COURT OF IOWA

No. 13–1229

Filed June 19, 2015

Amended September 30, 2015

**STATE OF IOWA,**

Plaintiff-Appellee,

vs.

**CLIFFORD LYNN MCNEAL,**

Defendant-Appellant.

On further review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Wapello County, Daniel P. Wilson (suppression) and Lucy J. Gamon (trial and sentencing), Judges.

The State seeks further review of a court of appeals decision finding the district court erred in denying defendant's motion to suppress and reversing defendant's conviction for theft in the first degree. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

Christopher R. Kemp of Kemp & Sease, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Mary A. Triick, Assistant Attorney General, Lisa Moressi, County Attorney, and Andrew J. Ritland, Assistant County Attorney, for appellee.

**ZAGER, Justice.**

In October 2011, police began to suspect Clifford McNeal received stolen property from a burglary that occurred in Ottumwa, Iowa. Thereafter, they received an anonymous tip from a concerned citizen informing them that McNeal had moved a trailer from Ottumwa to a rural area in Wapello County, Iowa. After police confirmed the location of the trailer and that it belonged to a company McNeal owned, they obtained a search warrant for the trailer. Pursuant to the search warrant, they searched the trailer and discovered the stolen property. The State subsequently charged McNeal with numerous offenses. McNeal filed a motion to suppress, claiming the judge who issued the search warrant failed to make a credibility determination as to each informant referenced in the application for search warrant and asserting there was no probable cause to support the search warrant. McNeal requested that the district court suppress the evidence obtained from the trailer. The district court denied the motion to suppress, and the case proceeded to a jury trial. The jury found McNeal guilty of theft in the first degree. *See* Iowa Code §§ 714.1(4), .2(1) (2011).

McNeal appealed, claiming the district court erred in denying his motion to suppress. He asserted the search of the trailer violated his rights under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. McNeal also raised numerous claims of ineffective assistance of trial counsel. We transferred the case to the court of appeals. The court of appeals concluded there was no probable cause to support the search warrant, reversed the judgment of the district court, and remanded the case for a new trial. The State applied for further review, which we granted.

For the reasons set forth below, we conclude the issuing judge had a substantial basis for concluding there was probable cause to support the search warrant and the district court properly denied McNeal's motion to suppress. Additionally, we conclude the record before us is inadequate to reach the merits of McNeal's ineffective-assistance-of-counsel claims. We vacate the decision of the court of appeals and affirm the judgment of the district court.

## I. Background Facts and Proceedings.

On June 1, 2011, the Ottumwa Police Department received a report from a construction-site manager that a construction site located near the Ottumwa Regional Health Center in Ottumwa had been burglarized. The construction-site manager reported that

> sometime during the overnight hours . . . somebody had broken into the new buildings and several of the tool trailers . . . on the job site. Three of the trailers had . . . their locks cut off of them. Two of the trailers had numerous tools removed from within while the third trailer . . . didn't have anything missing from it.

A significant number of large, concrete-construction tools and equipment were stolen from the site.

Officer Steven Harris was assigned to investigate the construction-site burglary. During his investigation, two anonymous persons informed him that John Wey and Mike Jones were "involved in the burglary or at least had first-hand knowledge of the burglary." Officer Harris subsequently conducted a background check on both Wey and Jones and discovered they each had numerous criminal convictions, including several for theft and burglary. Although this information suggested Wey and Jones might have been involved in the construction-site burglary, Officer Harris was unable to confirm their involvement at that time.

On July 2 at 3:40 a.m., Lisa Steck called the Ottumwa Police Department in a panic. She reported that "a man had been trying to break into her house and had just sped off eastbound out of her driveway." Lisa and her husband Ken Steck later reported that a laptop, a truck, and numerous tools were stolen from the residence. Officer Harris was also assigned to investigate the Steck burglary.

On July 6, Officer Harris spoke with the Stecks about the July 2 incident. Lisa described the man who had tried to break into the residence as "over six feet tall, thick, and in his late thirties or older." Later that day, a farmer notified the Ottumwa Police Department he had discovered a truck parked behind his barn in Wapello County. Several officers went to investigate and confirmed the truck belonged to the Stecks. The bed of the truck contained the tools stolen from the Steck residence. Thereafter, officers returned the truck to the Stecks. While the officers assisted the Stecks in unloading the stolen tools from the truck, Ken observed two bags in the bed of the truck that were not his: "a US Army bag" and "a blue reusable Walmart bag made of a heavy material."

On July 14, Officer Harris assisted another officer in executing a search warrant at Wey's residence. This search involved animal charges unrelated to the construction-site and Steck burglaries. During the search, Officer Harris "observed a standard issue green US Army bag . . . and a blue re-useable Walmart bag made of a heavy material." These bags were similar in appearance to the bags from the Stecks' truck. That same day, Officer Harris also confirmed Wey's physical appearance was consistent with Lisa's description of the man who had burglarized the Steck residence.

Police arrested Wey on the animal charges that same day. During the booking process, Wey provided police with a personal cell phone number. In an effort to link Wey to the Steck burglary, Officer Harris obtained user information, call logs, and text logs associated with the cell phone number. These records showed the cell phone was registered to Wey's wife, Lynn Wey. The records further showed Lynn's cell phone sent numerous phone calls and text messages to another cell phone registered to Wey around 3:40 a.m. on July 2—the same time Lisa called the Ottumwa Police Department to report the Steck burglary. Further, a series of texts sent between the Weys' phones between 3:44 and 3:50 a.m. on July 2 were a "rough summation of [outgoing police] radio traffic" at that same time.

Based on this information, Officer Harris believed both Wey and Lynn played a role in the Steck burglary. Officer Harris further believed Wey's involvement in the Steck burglary corroborated Wey's purported involvement in the construction-site burglary. Accordingly, Officer Harris obtained call and text logs for Wey's cell phone from May 31 through June 1—the time the construction-site burglary occurred. These records revealed Wey's cell phone sent and received numerous calls and text messages during this period. Two numbers comprised a large portion of the called or texted numbers; both of them were registered to David Downen of Downen Construction. Officer Harris further found that shortly after the construction-site burglary, Downen's cell phones received suspicious text messages from Wey stating that Wey "had new 'goodies' and tools and wanted to know if [Downen] wanted some." Officer Harris also conducted a background check on Downen and discovered he had numerous criminal convictions, including several for theft and robbery.

Based on this information, Officer Harris set up a meeting with Downen for September 14. At the meeting, Officer Harris presented Downen with the information he had discovered through his investigation. Downen admitted Jones and Wey had sold him stolen tools and equipment in the past. He also informed Officer Harris that "[Jones] and [Wey] often broke into buildings and stole tools and equipment to sell."

On September 20, police arrested Jones on a warrant for a separate incident in which police caught Jones and Wey stealing a concrete saw. Based on the information provided by Downen, Officer Harris contacted the Wapello County Attorney and arranged to speak with Jones about the construction-site burglary. Jones received a cooperation agreement for speaking with Officer Harris.

On October 3, Officer Harris, along with another officer, met with Jones. Jones informed them that he and Wey would frequently "break[] into different buildings to steal property." Jones admitted he and Wey were responsible for the break-in at the construction site. He also stated there were "personal identifiers on some of the equipment from the site that contained the name 'Brad.'" This was consistent with information the foreman at the construction site had provided Officer Harris. Jones also stated that he and Wey "took the majority of the load of stolen property from the . . . construction site . . . to Cliff McNeal where [McNeal] bought the stolen property for a fraction of what the property was actually worth." Jones also told the officers he and Wey "would often break into places and sell the stolen property to [McNeal]." Jones had "worked in construction for a long time and he knew construction equipment, so that is what he usually stole."

According to Jones, "[McNeal] knew the property was stolen because [Wey] and he often told [McNeal] where they stole the property from." Jones and Wey "usually me[t] . . . McNeal at his house . . . just south of the intersection of Finley and Moore Streets" in Ottumwa and would then "drive to a second location on Chester St[reet] near the intersection of Chester and Milner Streets." They would then "off-load large loads of stolen property into a secure structure at the [second] property." Independent investigation later confirmed that McNeal owned the property at the intersection of Finley and Moore Streets, and that McNeal's wife owned the property on Chester Street. Jones further stated that "the [stolen] property was no longer at the residence on Chester because [Wey], [McNeal], and [Jones] all knew that the police were on to them," and "[McNeal] told [him] that he had moved all of the stolen property a short time before [Jones] was arrested" on September 20. Finally, Jones informed the officers that "[McNeal] did not sell the equipment to other people, but rather kept the tools and equipment to work on his properties or to use with his company."

Also on October 3, Sergeant Jason Bell of the Ottumwa Police Department informed Officer Harris that he had "received an anonymous tip from a concerned citizen that . . . McNeal had moved an enclosed trailer that was bluish-green in color out of Ottumwa and further out into Wapello County." The concerned citizen stated that "the trailer had an attached ladder that allowed access to the roof." The concerned citizen further stated that "the trailer was on Copperhead R[oad] west of US Highway 63," such that "if you were traveling eastbound on Copperhead, the trailer would be on the right side of the road within the first major set of 'S' curves."

On October 5, Officer Harris, along with another officer, went to the location described by the concerned citizen. The officers "observed a bluish-green enclosed trailer with a ladder going to the roof in the geographic location that the concerned citizen had mentioned." The trailer was sitting in an open grass lot, "[t]here was no house near the trailer, and the lot did not appear to have an address associated with it."

Officer Harris returned to the location of the trailer on October 7 and acquired its license plate and VIN numbers. Upon further investigation, Officer Harris discovered the trailer was registered to "R & C Auto and Auto Repair," located on Milner Street in Ottumwa. He then confirmed that McNeal owned the property on Milner Street. He also checked two of Wey's recent arrest sheets and found that Wey had listed his current employer as " 'R & C Auto' " or " 'R&C Auto/Cliff's Constr.,' " respectively. Officer Harris had previously contacted the Department of Criminal Investigations Fusion Information Center and learned Wey had not reported any income since the second quarter of 2010. Officer Harris believed Wey's employment relationship with McNeal, coupled with the fact that Wey had not reported any income since the first half of 2010, bolstered Jones's credibility as to McNeal's involvement in the criminal activity. He also believed there was a "strong correlation" between Wey, Jones, and McNeal. Finally, Officer Harris conducted a background check on McNeal and discovered he had been convicted of theft in the first degree in 2004.

Based on the above facts, Officer Harris believed there was probable cause to search the trailer located off Copperhead Road. Accordingly, on October 7, he filed an application for search warrant in the district court for Wapello County. In the application, he attested to the facts as described above and recounted the various pieces of

information provided by the above-mentioned informants. Additionally, in explaining why he believed there was probable cause to support a search warrant, Officer Harris noted, "[T]he information given by the concerned citizen that the trailer was *recently* moved to its current location is credible because . . . I w[as] able to corroborate the other information such as the appearance, location, and ownership of the trailer." (Emphasis added.) Finally, Officer Harris stated:

> From my training and experience in general criminal investigations, I have learned that a person involved in criminal activity most often keeps items used during the commission of the crime, equipment, trophies and records at their residence which includes outbuildings on their property; in their vehicles or on their persons. . . .

> From my training and experience I know that individuals who possess, purchase, steal, or distribute stolen property often times use their own vehicles or trailers to transport and store such property.

The application for search warrant describes the place to be searched as "[o]ne bluish-green colored enclosed trailer bearing Iowa license plate 6996 AX located on the west side of the road between 11365 and 11346 Copperhead Road in Wapello County, Iowa 52501." A list of property stolen from the construction site was attached to the application. The issuing judge granted the search warrant. On the endorsement on the search warrant application, the judge noted the application relied, in part, on information supplied by a confidential informant. The judge deemed this information credible because it was "later confirmed to be true by police, including [Officer Harris]."

That same day, Officer Harris, along with another officer, returned to the location of the trailer to execute the search warrant. Upon arrival, Officer Harris spoke with Donald Carnes, who owned the property where the trailer was parked. Carnes informed Officer Harris that "McNeal had

called him and told him that he had problems with tickets on the trailer in town, and . . . asked him if he could park [the] trailer out on his property." Carnes then called McNeal. Pursuant to the search warrant, the other officer then cut a padlock off the door to the trailer and the officers proceeded to search it.

Upon entering the trailer, the officers discovered "a large pile of what appeared to be construction equipment." Officer Harris observed names affixed to some of the equipment, including the name of one of the construction companies from the construction-site burglary. Shortly thereafter, McNeal arrived at the scene. Officer Harris approached McNeal and told him the trailer was being seized and towed "because of the stolen property that was inside." McNeal responded, "What do you know about—I mean, what are you talking about?"

On April 9, 2012, the State filed a trial information charging McNeal with one count of ongoing criminal conduct in violation of Iowa Code section 706A.2(4), one count of theft in the first degree in violation of Iowa Code sections 714.1(4) and 714.2(1), and one count of fraudulent practice in the second degree in violation of Iowa Code sections 714.8(5) and 714.10(1). The State later dismissed two of the three counts, leaving a single count for theft in the first degree.

On May 23, McNeal filed a motion to suppress in which he generally requested that the district court suppress all evidence obtained from the trailer because the search warrant police used to search the trailer was invalid. On July 18, McNeal filed an addendum to the motion to suppress clarifying why he claimed the search of the trailer was invalid. Among other things, he claimed the issuing judge failed to comply with Iowa Code section 808.3 by failing to make a credibility determination as to each informant referenced in the application for

search warrant. On July 26, after a hearing, the district court denied McNeal's motion to suppress. The district court concluded that, read as a whole, the record established the reliability of the information provided to officers by the various informants referenced in the application for search warrant, and that there was probable cause to support the search warrant.

On August 10, McNeal filed a motion to enlarge and amend ruling on motion to suppress. Therein, he requested that the district court reconsider its conclusions concerning reliability and probable cause. On August 24, the district court denied McNeal's motion to enlarge and amend. The case proceeded to trial on April 16, 2013. On April 22, the jury returned its verdict finding McNeal guilty of theft in the first degree.

McNeal appealed his conviction, claiming the district court erred in denying his motion to suppress because the search warrant was based on an anonymous tip from a concerned citizen whose credibility had not been sufficiently established. McNeal asserted that without this credibility determination, there was no probable cause to support the search warrant. McNeal asserted the search of the trailer violated his rights under the Fourth Amendment to the United States Constitution and article I, section 8 of the Iowa Constitution. McNeal also raised numerous claims of ineffective assistance of trial counsel. We transferred the case to the court of appeals. The court of appeals reversed the judgment of the district court and remanded the case for a new trial. The court of appeals concluded the anonymous tip from the concerned citizen lacked sufficient indicia of reliability and could not be considered in determining whether there was probable cause to support the search warrant. The court of appeals also concluded that absent the

anonymous tip, there was no probable cause to support the search warrant.

The State applied for further review, which we granted.

## II. Standards of Review.

"We review questions of a constitutional dimension de novo, based on the totality of the circumstances." *State v. Johnson,* 756 N.W.2d 682, 686 (Iowa 2008). However, we do not make an independent determination of probable cause; rather, we determine "whether the issuing judge had a substantial basis for concluding probable cause existed." *State v. Gogg,* 561 N.W.2d 360, 363 (Iowa 1997). In so doing, we examine only the information actually presented to the judge. *Id.* Ineffective-assistance-of-counsel claims are reviewed de novo. *State v. Clay,* 824 N.W.2d 488, 494 (Iowa 2012). This is because such claims are based on the Sixth Amendment to the United States Constitution.[1] *Id.*

## III. Analysis.

**A. Error Preservation.** The State asserts McNeal failed to preserve error on his Fourth Amendment claim. For purposes of this appeal, we assume without deciding that error was preserved on this claim because we find it is without merit. *See State v. Taylor*, 596 N.W.2d 55, 56 (Iowa 1999) ("We choose to pass [on defendant's] serious

---

[1]In his brief, McNeal cites both the Fourth Amendment and article I, section 8 of the Iowa Constitution in support of his claim that the district court failed to suppress the evidence obtained from the search of the trailer. Similarly, McNeal cites both the Sixth Amendment and article I, section 10 of the Iowa Constitution in support of his ineffective-assistance-of-counsel claims. McNeal does not argue that we should interpret article I, section 8 differently than the parallel provisions of the Fourth Amendment. Neither does he argue that we should interpret article I, section 10 differently than the parallel provisions of the Sixth Amendment. Thus, for purposes of our analysis we assume the legal principles governing each set of corresponding provisions are the same. *See Simmons v. State Pub. Defender*, 791 N.W.2d 69, 76 n.3 (Iowa 2010). Even when a party has not proposed a substantive standard independent of federal law, we reserve the right to apply the standard presented in a fashion different than federal caselaw. *State v. Oliver*, 812 N.W.2d 636, 650 (Iowa 2012).

preservation-of-error problems and affirm on the merits."); *State v. Hochmuth*, 585 N.W.2d 234, 236 (Iowa 1998) ("Assuming without deciding that [defendant] has preserved error, we find her challenge . . . is without merit."). We turn now to consider whether there was probable cause to support the search warrant in this case.

**B. The Search Warrant.** The Fourth Amendment to the United States Constitution assures "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "The Fourth Amendment is binding on the states through the Fourteenth Amendment of the federal constitution." *State v. Shanahan*, 712 N.W.2d 121, 131 (Iowa 2006). "The Fourth Amendment requires probable cause to support a search warrant." *Id.*; *Gogg*, 561 N.W.2d at 363.

The test to determine whether there is probable cause to issue a search warrant is

> "whether a person of reasonable prudence would believe a crime was committed on the premises to be searched or evidence of a crime could be located there." Probable cause to search requires a probability determination that "(1) the items sought are connected to criminal activity and (2) the items sought will be found in the place to be searched."

*Gogg*, 561 N.W.2d at 363 (quoting *State v. Weir*, 414 N.W.2d 327, 330 (Iowa 1987) (first quote); *United States v. Edmiston*, 46 F.3d 786, 789 (8th Cir. 1995) (second quote)); *accord Shanahan*, 712 N.W.2d at 131–32.

As a court, "[w]e have . . . generally endorsed the warrant-preference requirement. We have repeatedly stated that warrantless searches and seizures that did not fall within one of the 'jealously and carefully drawn exceptions' are unreasonable." *State v. Ochoa*, 792 N.W.2d 260, 285 (Iowa 2010) (quoting *State v. Strong*, 493 N.W.2d 834, 836 (Iowa 1992)). On the other hand, when police obtain a warrant, we

do not strictly scrutinize the sufficiency of the underlying affidavit. *See Illinois v. Gates,* 462 U.S. 213, 236, 103 S. Ct. 2317, 2331, 76 L. Ed. 2d 527, 546–47 (1983). To do so would be "inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Id.* at 236, 103 S. Ct. at 2331, 76 L. Ed. 2d at 547. As the Supreme Court of the United States has explained:

> If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrantless searches, with the hope of relying on consent or some other exception to the warrant clause that might develop at the time of the search. In addition, the possession of a warrant by officers conducting an arrest or search greatly reduces the perception of unlawful or intrusive police conduct, by assuring "the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search."

*Id.* (quoting *United States v. Chadwick,* 433 U.S. 1, 9, 97 S. Ct. 2476, 2482, 53 L. Ed. 2d 538, 547 (1977), *abrogated on other grounds by California v. Acevedo,* 500 U.S. 565, 579, 111 S. Ct. 1982, 1991, 114 L. Ed. 2d 619, 633–34 (1991)).

This is why, as a reviewing court, we do not independently determine probable cause and instead "merely decide whether the issuing judge had a substantial basis for concluding probable cause existed." *Gogg,* 561 N.W.2d at 363. "In determining if evidence seized pursuant to a warrant should be suppressed, 'the affidavit of probable cause is interpreted in a common sense, rather than a hypertechnical, manner.'" *Shanahan,* 712 N.W.2d at 132 (quoting *Gogg,* 561 N.W.2d at 363–64). "[W]e draw all reasonable inferences to support the judge's finding of probable cause and give great deference to the judge's finding." *Gogg,* 561 N.W.2d at 364 (citation omitted); *accord Gates,* 462 U.S. at 236, 103 S. Ct. at 2331, 76 L. Ed. 2d at 547. "Close cases are decided in

favor of upholding the validity of the warrant." *Gogg*, 561 N.W.2d at 364. In assessing whether a substantial basis existed to find probable cause, we are " 'limited to consideration of only that information, reduced to writing, which was actually presented to the [judge] at the time the application for warrant was made.' " *Id.* (alteration in original) (quoting *State v. Godbersen*, 493 N.W.2d 852, 855 (Iowa 1992)). However, before we begin our probable cause analysis, we must address two issues raised by McNeal.

1. *Challenge to probable cause based on anonymous tip.* McNeal first asserts that the information contained in the anonymous tip—that McNeal had moved the trailer—should not have been deemed credible by the issuing judge. In the context of anonymous tips, we "recognize[] a rebuttable presumption that 'information imparted by a citizen informant in generally reliable.' " *State v. Walshire*, 634 N.W.2d 625, 629 (Iowa 2001) (quoting *State v. Niehaus*, 452 N.W.2d 184, 189 (Iowa 1990)). However, an anonymous tip alone does not ordinarily contain sufficient indicia of reliability to provide probable cause. *See Florida v. J.L.*, 529 U.S. 266, 270, 120 S. Ct. 1375, 1378, 146 L. Ed. 2d 254, 260 (2000). On the other hand, the United States Supreme Court has held that a significantly corroborated anonymous tip is sufficient for purposes of the Fourth Amendment. *Alabama v. White*, 496 U.S. 325, 331, 110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301, 309 (1990). "[I]f a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable." *Id.* at 330, 110 S. Ct. at 2416, 110 L. Ed. 2d at 309.

We recently addressed the issue of anonymous tips in the context of a traffic stop. In *State v. Kooima*, 833 N.W.2d 202, 204 (Iowa 2013), police received an anonymous tip from a restaurant patron who claimed

to have seen several men drinking before they left the restaurant in a motor vehicle. Police followed the vehicle and, despite observing no traffic violations, stopped it. *Id.* at 205. In concluding the stop violated the Fourth Amendment, we noted:

> Cases holding an anonymous tip had the sufficient indicia of reliability to justify the stop contain three common elements. First, the tipster gave an accurate description of the vehicle, including its location, so the police could identify the vehicle. Next, the tipster based his or her information on personal, eyewitness observations made contemporaneously with a crime in progress that was carried out in public, identifiable, and observable by anyone. . . . Finally, the caller described specific examples of traffic violations, indicating the report was more than a mere hunch. . . .
>
> On the other hand, when the anonymous tip does not include details pertaining to the tipster's personal observation of erratic driving, other facts that would lead to a reasonable inference the tipster witnessed an intoxicated driver, or details not available to the general public as to the defendant's future actions, state supreme courts have ruled the stop violated the Fourth Amendment.

*Id.* at 208–09, 211.

Accordingly, we held that when the sole basis for an automobile stop is

> a bare assertion by an anonymous tipster, without relaying to the police a personal observation of erratic driving, other facts to establish the driver is intoxicated, or details not available to the general public as to the defendant's future actions[, the tip] does not have the requisite indicia of reliability to justify an investigatory stop. Such a tip does not meet the requirements of the Fourth Amendment.

*Id.* at 210–11.

In this case, however, Officer Harris *independently* verified three of the four components contained in the tip. He confirmed: (1) the location of the trailer as reported by the tipster; (2) that the trailer possessed the features as described by the tipster; and (3) that the trailer belonged to McNeal as reported by the tipster. The only aspect of the tip Officer

Harris did not independently verify was the movement of the trailer. However, trailers are inherently mobile, a fact that did not need external verification but may be inferred from the nature of the vehicle itself.

McNeal next asserts that Officer Harris's indication the trailer was "recently" moved, as contained within the application for search warrant, should not have been considered by the judge in determining whether probable cause existed. McNeal claims this information was not contained in the tip and that there was no way to confirm whether the trailer was moved "recently." However, the court also had information from Jones that McNeal "moved all of the stolen property a short time before [Jones] was arrested" on September 20. Further, a trailer, given its mobile character, was a logical place for McNeal to attempt to hide the stolen property. Thus, any concern that the judge erroneously understood the tip to include information about when the trailer was moved does not undercut the court's determination of probable cause under the facts of this case.

2. *Use of McNeal's 2004 conviction.* McNeal also maintains that it was improper for the issuing judge to consider his 2004 conviction for theft in the first degree. However, as a general matter, an individual's prior criminal record is a valid consideration. *See, e.g., State v. Hoskins,* 711 N.W.2d 720, 727 (Iowa 2006) (considering officer's knowledge of suspect's prior drug convictions in determining whether there was probable cause to justify search); *State v. Poulin,* 620 N.W.2d 287, 290 (Iowa 2000) (considering defendant's prior conviction in determining whether there was probable cause to support the issuance of a search warrant); *State v. Padavich,* 536 N.W.2d 743, 748 (Iowa 1995) (noting that several factors, including "a suspect's history of involvement in the drug trade[,]" may be considered in determining whether there is

probable cause to support the issuance of a search warrant). The use of such information is common in law enforcement and is of some, although limited, value in the ultimate determination of probable cause. The judge could consider it as a factor.

3. *Probable cause for the search warrant.* McNeal contends that excluding both the information that he "recently" moved the trailer and the evidence of his prior conviction, there was no probable cause to support the search warrant for the trailer. He argues the facts recited in the affidavit were insufficient to establish a nexus between the stolen tools and the trailer. However, even if we accept McNeal's argument that the application for search warrant contained impermissible information, a reviewing court can remove the offending information and determine whether the remaining information establishes probable cause. *See Niehaus*, 452 N.W.2d at 186–87 ("[T]he offensive material must be deleted and the remainder of the warrant reviewed to determine whether probable cause existed."). Ultimately, we must determine "whether the issuing judge had a substantial basis for concluding probable cause existed" to search the trailer. *Gogg*, 561 N.W.2d at 363. In so doing, we consider the totality of the circumstances as presented in the application for search warrant, and ask whether the common-sense inferences a person may draw from them would lead "a person of reasonable prudence [to] believe . . . evidence of a crime could be located" in the place to be searched. *Weir*, 414 N.W.2d at 330; *accord Shanahan*, 712 N.W.2d at 131; *State v. Thomas*, 540 N.W.2d 658, 662–63 (Iowa 1995).

As an initial matter, we note that McNeal also maintains Jones was not a credible informant because he received a cooperation agreement in exchange for his statements against McNeal; thus, according to McNeal, Jones had a motive to act out of self-interest. While the cooperation

agreement is part of the record, it was not part of the application for search warrant considered by the issuing judge in assessing probable cause. Notwithstanding, we find Jones's statements to Officer Harris were sufficiently reliable. We consider various factors in determining whether information provided by an informant is reliable: (1) "whether the informant was named"; (2) "the specificity of [the] facts detailed by the informant"; (3) "whether the information furnished was against the informant's penal interest"; (4) "whether the information was corroborated" by other information known to law enforcement; (5) "whether the information was not public knowledge"; (6) "whether the informant was trusted by the accused"; and (7) "whether the informant directly witnessed the crime or fruits of it in the possession of the accused." *Weir*, 414 N.W.2d at 332; *accord Niehaus*, 452 N.W.2d at 190.

Here, Jones was a named informant. He risked retaliation from McNeal or Wey for providing information to the officers. He provided the officers with very specific information. Further, Officer Harris corroborated many aspects of the information Jones provided, specifically: Wey's association with McNeal, that McNeal and his wife owned the properties Jones identified as drop points for the stolen items, and that there were "personal identifiers on some of the equipment from the site that contained the name 'Brad.' " Some of this information, such as the identifying marks on the stolen property, was not public knowledge. Jones was directly involved in the crimes and participated in transporting the stolen equipment to McNeal's properties. Further, virtually all of the information provided by Jones was against his penal interest, regardless of any cooperation agreement. We find the information Jones provided officers was reliable.

We turn now to consider whether the facts recited in the affidavit established a sufficient nexus between the stolen tools and the trailer. "Although a nexus must be established between the items to be seized and the place to be searched, direct observation is not required." *State v. Groff*, 323 N.W.2d 204, 212 (Iowa 1982); *accord Godbersen*, 493 N.W.2d at 856 ("Direct observation is not required."). This nexus between criminal activity, the items to be seized, and the place to be searched "can be found by considering the type of crime, the nature of the items involved, the extent of the defendant's opportunity for concealment, and the normal inferences as to where the defendant would be likely to conceal the items." *Groff*, 323 N.W.2d at 212; *accord Hoskins*, 711 N.W.2d at 728; *Gogg*, 561 N.W.2d at 365; *State v. Randle*, 555 N.W.2d 666, 671 (Iowa 1996); *Thomas*, 540 N.W.2d at 663; *State v. Leto*, 305 N.W.2d 482, 486 (Iowa 1981); *see also Godbersen*, 493 N.W.2d at 855 ("It is reasonable to assume that persons involved with drug trafficking would keep evidence—drugs, weighing and measuring devices, packaging materials and profits—at their residences."); *State v. Iowa Dist. Ct.*, 247 N.W.2d 241, 248 (Iowa 1976) (finding it is reasonable to infer that stolen property would be found at suspects' residence).

Here, even if we excise the information contained in the anonymous tip and evidence of McNeal's prior conviction as argued by McNeal, based on the totality of the circumstances as presented in the application for search warrant, probable cause existed to support the search warrant in this case. Looking at the detailed information presented in the application, and considering the common-sense inferences a reasonable person may draw from that information, the issuing judge could have reasonably concluded McNeal was the recipient of stolen tools and equipment from several burglaries. The issuing judge

could have also reasonably concluded authorities would find evidence of those crimes in the trailer.

Officer Harris's application for search warrant was extensive and chronicled the lengthy investigation that culminated in the discovery of the trailer. In the October 3 interview, Jones told Officer Harris that he and Wey "took the majority of the load of stolen property from the . . . construction site . . . to . . . McNeal where [McNeal] bought the stolen property for a fraction of what the property was actually worth." Jones further informed Officer Harris that he and Wey "would often break into places and sell the stolen property to [McNeal]." Jones also identified two specific drop points for the stolen tools and equipment. Jones further informed Officer Harris that he spoke with McNeal shortly before his arrest on September 20. At that time, Jones, Wey, and McNeal all suspected "that the police were on to them." During this conversation, McNeal told Jones he had moved the stolen property, such that it was no longer at the residence on Chester Street. Given these detailed statements, it is reasonable to infer both that McNeal received stolen tools and equipment from the construction-site burglary and that he had recently moved them. Officer Harris corroborated this connection between Jones, Wey, and McNeal during his subsequent investigation by discovering that Wey had recently reported McNeal's company as his employer and confirming that McNeal and his wife owned the property Jones identified as drop points for the stolen tools and equipment.

On the same day Officer Harris met with Jones, Sergeant Bell informed Officer Harris about the anonymous tip regarding the trailer. Officer Harris confirmed the location of the trailer, its physical description, and that McNeal owned the company to which it was registered. Additionally, the application for search warrant indicates the

construction-site burglary involved items stolen from *several tool trailers*. While the application does not indicate that Jones specifically observed McNeal use a trailer to move the stolen property, "direct observation is not required." *Groff*, 323 N.W.2d at 212; *accord Godbersen*, 493 N.W.2d at 856. It is reasonable to infer that construction tools stolen from one trailer could be stored and found in another, similar trailer. *See Godbersen*, 493 N.W.2d at 855; *Groff*, 323 N.W.2d at 212 ("We think the magistrate could reasonably infer that defendants' residence was the likely location for processing the marijuana."); *Leto*, 305 N.W.2d at 486 (finding it is reasonable to infer that the suspect in automobile theft ring would keep stolen automobiles at an auto body repair shop located at his residence); *Iowa Dist. Ct.*, 247 N.W.2d at 248–49. This is especially true given that McNeal owned both a construction company of his own and at least one construction trailer. In addition, Officer Harris discovered Wey had recently reported McNeal's company as his employer—the same company that owned the trailer.

Further, considering the type of crime, the nature of the items involved, and where a person would likely conceal the items, the nature of the trailer and the location where it was found also support the conclusion that officers would find the stolen items there. *See Groff*, 323 N.W.2d at 212. The trailer was mobile, large enough to store the stolen items, and enclosed. It was a good, if not ideal, way to transport and store the stolen items. Further, Officer Harris discovered the trailer in a rural area, apart from other structures, and observed that it did not appear to have an address associated with it. It was a good, if not ideal, location to conceal the items—hidden from plain view and away from McNeal. *See id.* (considering ideal location of farmstead used to conceal a marijuana-processing station to support finding of probable cause).

Certainly, the fact that a trailer is parked in a rural area is not alone sufficient to warrant an inference that evidence of a crime could be located therein. However, combined with the detailed information contained within the application for search warrant, a person of reasonable prudence would believe McNeal chose the trailer as a hiding place for the stolen property. *Shanahan*, 712 N.W.2d at 131–32.

Finally, "[w]e have recognized 'police must "draw upon their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." ' " *State v. Maddox*, 670 N.W.2d 168, 172–73 (Iowa 2003) (quoting *State v. Heuser*, 661 N.W.2d 157, 161 (Iowa 2003)); *see also Hoskins*, 711 N.W.2d at 728 (considering officers' knowledge and experience in assessing whether probable cause existed to support a search). We have also recognized that "[a]n officer's expert opinion is an important factor to be considered by the judge reviewing a warrant application." *Godbersen*, 493 N.W.2d at 856; *accord United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) ("A number of cases have ruled that an agent's expert opinion is an important factor to be considered by the judge reviewing a warrant application."). In the application for search warrant, Officer Harris stated that, based on his training and experience, "person[s] involved in criminal activity . . . often keep[] items used during the commission of the crime, equipment, trophies and records . . . in their vehicles." He further noted that "individuals who possess, purchase, steal, or distribute stolen property often times use their own vehicles or trailers to transport and store such property." Officer Harris knew the construction-site burglary involved items stolen from several tool trailers. Based on Jones's statements, Officer Harris knew McNeal had possession of the stolen property,

McNeal had moved the stolen property, McNeal owned a trailer parked in a rural area in Wapello County, the trailer was similar to the trailers from which the property was stolen, and the trailer was a good place to keep the stolen property. Coupled with his training and experience, it was probable that Officer Harris would find the moveable tools and equipment in McNeal's trailer.

The totality of the circumstances as presented in the application for search warrant and the common-sense inferences a reasonable person may draw from them result in the conclusion that the issuing judge could have reasonably concluded both that McNeal received stolen tools and equipment from various burglaries and that authorities would find evidence of those crimes in the trailer. Even if we excise the information contained in the anonymous tip and evidence of McNeal's prior conviction as argued by McNeal, the issuing judge had a substantial basis for concluding there was probable cause that evidence of a crime could be located in the place to be searched: McNeal's trailer. The district court properly denied the motion to suppress because the search warrant was valid.

**C. Ineffective Assistance of Counsel.** In a criminal case, an ineffective-assistance-of-counsel claim "need not be raised on direct appeal from the criminal proceedings in order to preserve the claim for postconviction relief purposes." Iowa Code § 814.7(1). A defendant may raise such a claim on direct appeal if they have "reasonable grounds to believe that the record is adequate to address the claim on direct appeal." *Id.* § 814.7(2). Ordinarily, we preserve such claims for postconviction relief proceedings. *Clay*, 824 N.W.2d at 494. "We prefer to reserve such questions for postconviction proceedings so the defendant's trial counsel can defend against the charge." *State v. Tate,* 710 N.W.2d 237, 240

(Iowa 2006). This is especially appropriate when the challenged actions concern trial strategy or tactics counsel could explain if a record were fully developed to address those issues. *Clay*, 824 N.W.2d at 494. "We will resolve the claims on direct appeal only when the record is adequate." *Id.* It is a rare case in which the trial record alone is sufficient to resolve a claim on direct appeal. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).

McNeal has raised several claims of ineffective assistance of counsel in this appeal. Specifically, he asserts trial counsel was ineffective in: (1) failing to introduce favorable testimony from Wey at trial, either through a transcript or recording of a prior interview conducted by police, or by presenting him as a witness; (2) failing to adequately challenge the value of the stolen construction equipment at trial; (3) failing to object to testimony from Jones at trial implicating McNeal in dealing drugs; and (4) failing to file a motion to compel discovery, extend deadlines, or seek a continuance because of late discovery provided by the State. In our de novo review of the record, we conclude the record before us is inadequate to reach the merits of McNeal's ineffective-assistance-of-counsel claims. McNeal will need to develop these claims through possible postconviction proceedings.

## IV. Conclusion.

The issuing judge had a substantial basis for concluding there was probable cause to support the search warrant and the district court properly denied McNeal's motion to suppress. The search of the trailer did not violate the Fourth Amendment or article I, section 8 of the Iowa Constitution. Additionally, the record before us is inadequate to reach the merits of McNeal's ineffective-assistance-of-counsel claims. We

vacate the decision of the court of appeals and affirm the judgment of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**