# IN THE COURT OF APPEALS OF IOWA

No. 18-0123
Filed March 20, 2019

**STATE OF IOWA,**
     Plaintiff-Appellee,

**vs.**

**QUAYSHAN LAMONTEZ MOORE,**
     Defendant-Appellant.

_____

Appeal from the Iowa District Court for Scott County, John D. Telleen (trial) and Henry W. Latham II (sentencing), Judges.

Quayshan Moore appeals from judgment and sentences following his multiple convictions. **AFFIRMED.**

Eric D. Tindal of Keegan Tindal & Mason, Iowa City, for appellant.

Thomas J. Miller, Attorney General, and Linda J. Hines, Assistant Attorney General, for appellee.

Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**POTTERFIELD, Presiding Judge.**

Quayshan Moore appeals following a jury trial that resulted in convictions for possession of crack cocaine with intent to deliver, in violation of Iowa Code section 124.401(1)(c)(3) and 124.401(1)(e) (2017) (firearm enhancement); failure to affix a drug tax stamp, in violation of section 453B.12; possession of a firearm by a domestic violence offender, in violation of section 724.26(2)(a); carrying weapons, in violation of section 724.4(1); interference with official acts, in violation of section 719.1(1)(f); and assault causing bodily injury, in violation of section 708.2(2). Moore challenges the sentences imposed and claims trial counsel was ineffective in stipulating that he was a prohibited person and in failing to challenge the sufficiency of evidence of his intent to deliver cocaine.

*A. Sentencing.*

Moore first asserts the district court failed to state sufficient reasons for imposing consecutive sentences. We review sentencing decisions for errors of law. *State v. Formaro*, 638 N.W.2d 720, 724 (Iowa 2002). We will only reverse the district court if the court abused its discretion or if there is a defect in the sentencing procedure. *State v. Letscher*, 888 N.W.2d 880, 883 (Iowa 2016).

At the sentencing hearing, the State noted that count one, the drug offense with the firearm enhancement, required incarceration. The State recommended that the sentence on that count run consecutive "at a minimum at least to" the conviction of possession of a firearm as a domestic violence offender, noting the two counts "are absolutely separate and distinct acts of criminal activity." The defense asked that all sentences run concurrently because Moore was facing a twenty-year sentence on the first count and "to

keep him in there for an extra five . . . doesn't do him any more service in his rehabilitation."

Here, the sentencing proceeding involved the six counts following the jury trial, as well as three other charges to which Moore pled guilty. The court imposed terms of incarceration on all nine charges and stated:

> As to any consecutive or concurrent sentencing in all of these cases, it is the court's determination that the State's recommendation as to Count 3 in FECR386810 [possession by a prohibited person] is appropriate given the severity of the offenses, and I will make that count consecutive, but I will deny the State's other requests as to the other files. The other files will be served concurrently. I feel for rehabilitation to occur in another additional five years of incarceration is not necessary. I would hope that Mr. Moore has learned from the seriousness of these offenses and the sentencing that I have imposed at this time.

A court imposing consecutive sentences must state on the record its reasons for imposing consecutive sentences. *State v. Jacobs*, 607 N.W.2d 679, 690 (Iowa 2000). At minimum, a cursory explanation must be provided to allow review of the trial court's discretionary action. *Id.* Our review of the sentencing transcript shows the court gave adequate reasons for requiring the consecutive sentences.

*B. Ineffective assistance.*

*1. Stipulation.* Moore next asserts his counsel was ineffective in stipulating that he was a person prohibited from carrying a firearm and for failing to challenge the sufficiency of the evidence of his intent to deliver to sustain the conviction for possession with intent to deliver.

We review ineffective-assistance-of-counsel claims de novo. *Nguyen v. State*, 878 N.W.2d 744, 750 (Iowa 2016). The proponent must show (1) counsel

breached an essential duty and (2) prejudice resulted. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).

A defendant may raise an ineffectiveness claim on direct appeal if they have "reasonable grounds to believe that the record is adequate to address the claim on direct appeal." Iowa Code § 814.7(2). Ordinarily, we preserve such claims for postconviction-relief proceedings. *State v. McNeal*, 867 N.W.2d 91, 105 (Iowa 2015).

> "We prefer to [p]reserve such questions for postconviction proceedings so the defendant's trial counsel can defend against the charge." This is especially appropriate when the challenged actions concern trial strategy or tactics counsel could explain if a record were fully developed to address those issues. "We will resolve the claims on direct appeal only when the record is adequate." It is a rare case in which the trial record alone is sufficient to resolve a claim on direct appeal.

*Id.* at 105–06 (citations omitted).

This is not one of those rare cases where the trial record is alone sufficient to resolve the claim related to the stipulation. Moore challenges the adequacy of the underlying no-contact-order hearing for which we have no record. Moreover, there may well be tactical reasons for the stipulation that he was a prohibited person. Therefore, we preserve the claim for possible postconviction-relief proceedings. *See State v. Clay*, 824 N.W.2d 488, 501–02 (Iowa 2012).

    *2. Sufficiency of evidence of intent to deliver.* With respect to his claim that counsel should have challenged the sufficiency of the evidence of his intent to deliver, we conclude Moore cannot prove prejudice because there is substantial evidence from which the jury could find an intent to deliver.

"Because it is difficult to prove intent by direct evidence, proof of intent usually consists of circumstantial evidence and the inferences that can be drawn from that evidence." *State v. Grant*, 722 N.W.2d 645, 647-48 (Iowa 2006).

On August 16, 2017, law enforcement responded to a 911 call from Moore's ex-wife reporting Moore had hit her and was waving a gun. Moore left the residence before police arrived. However, police learned Moore had packed a bag and called someone to pick him up before leaving the residence. A person matching the ex-wife's description of Moore was seen by Captain Keith Kimball a few blocks away sitting at the end of a driveway. Captain Kimball observed the person get into a car that pulled up. The captain followed the car and, when other police vehicles were nearby, activated his emergency lights.

As soon as Captain Kimball turned on his lights, the suspect opened the back door of the car, jumped out, and ran. Captain Kimball stopped and ran after the man, as did Detective James Bennett. Detective Bennett testified Moore had outstanding warrants and was "known to run." The detective noticed there was a heavy object "swaying" in the suspect's pocket as he ran. The man ignored orders to stop and ran into a creek. Detective Bennett pursued him over a retaining wall and into the creek. When the man climbed out of the creek on the other side, police intercepted him. The man denied he was Moore. However, his ex-wife arrived at the scene and identified Moore. He continued to deny his identity until his fingerprints were taken and compared to those on file.

Detective Bennett found a plastic baggie floating on the surface of the creek through which Moore had run. The baggie contained approximately twelve rocks of crack cocaine weighing 3.94 grams wrapped in three sandwich bags.

Detective Bennett also found a $20 bill in the creek near the cocaine. About six to eight feet away from the drugs, Detective Bennett found a black handgun.

At trial, Sergeant Douglas Scott, who supervises the Bettendorf Police narcotics unit, testified that the dosage unit for crack cocaine is approximately one-tenth of a gram and sells for approximately ten to twenty dollars. In his experience, Sergeant Scott did not consider 3.94 grams—thirty-nine units worth—of crack cocaine to be a personal use amount.

"The quantity and packaging of a controlled substance may be indicative of an intent to deliver." *State v. See*, 532 N.W.2d 166,169 (Iowa Ct. App. 1995). Sergeant Scott's expert opinion was that the amount and packaging of the crack cocaine found in the creek was not for personal use. Viewing the evidence in the light most favorable to the State and recognizing "[t]he jury was free to believe or disbelieve the defendant's theory that the packages were more consistent with personal use rather than distribution," there was substantial evidence of intent to deliver to sustain the conviction. *See id.* Moore cannot prove prejudice on this claim of ineffective assistance of counsel.

We affirm the convictions and sentences. We preserve Moore's claim that counsel was ineffective in stipulating Moore was a person prohibited from possessing a firearm.

**AFFIRMED.**