**IN THE COURT OF APPEALS OF IOWA**

No. 22-1764
Filed November 8, 2023

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DAVID JAMES ROE,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Johnson County, Kevin McKeever,

Judge.


        The defendant challenges the denial of his motion to suppress following his

conviction for operating while intoxicated, second offense.  **AFFIRMED.**


        Colin Murphy of Gourley Rehkemper Lindholm, P.L.C., West Des Moines,

for appellant.

        Brenna Bird, Attorney General, and Thomas J. Ogden, Assistant Attorney

General, for appellee.


        Considered by Greer, P.J., and Schumacher and Ahlers, JJ.

**GREER, Presiding Judge.**

David Roe challenges the denial of his motion to suppress evidence following his conviction for operating while intoxicated (OWI), second offense. On appeal, Roe argues there was not probable cause of his impairment to support the search warrant for a sample of his blood. Excluding the evidence that Roe's passenger had a drug pipe in her pocket, we find that there was a substantial basis to determine probable cause existed based on the circumstances of the motorcycle crash, the statements and observations of an eyewitness and persons responding to the scene, and Roe's previous OWI conviction, so we affirm.

I.      **Background Facts and Prior Proceedings.**

On June 21, 2020, around 7:19 p.m., Roe drove off the road and crashed his motorcycle while driving in rural Johnson County. Based upon the dynamics of the accident, it appeared Roe lost control of the motorcycle while negotiating a curve in the road. As determined by a deputy accident reconstructionist, although Roe attempted to brake, he likely was traveling at a high rate of speed and was unable to navigate the turn while remaining on the road. Skid marks pointed straight ahead rather than starting to curve with the turn in the road. In the area of the skid, the pavement was clear and dry. After leaving the roadway, Roe and his passenger fell off the motorcycle in the crash and were seriously injured. The passenger was paralyzed as a result of the crash. A driver who was behind Roe at the time called 911. Firefighters, Emergency Medical Technicians (EMTs), and Johnson County Sheriff's Deputies responded to the scene.

Johnson County Sheriff's Deputy Kyle Campbell was one of the deputies who responded to the scene; after speaking with the firefighters, EMTs, and other

deputies, he applied for a search warrant for a sample of Roe's blood, urine, and/or breath. In the warrant application, Deputy Campbell wrote that he sought a specimen of Roe's blood, urine, and/or breath because "Officers have probable cause to believe that a traffic violation under Iowa Code § 321J.2 has occurred and this evidence is relevant to a criminal investigation into a violation of Iowa Code § 321J.2." The warrant application also contained a statement that a driver in a vehicle behind Roe saw him lose control of his motorcycle and drive off the road. The witness alerted officers that she watched Roe crash into the ditch, even though the road was paved and dry that evening, although she thought he may have hit gravel. The deputies found no loose gravel near where the skid marks were found. In addition, Deputy Campbell wrote that Roe "told fire fighters he had one alcoholic drink." Because of the serious injuries from the accident, "deputies on scene did not talk with [Roe] before he was taken to [University of Iowa Hospitals and Clinics (UIHC)]. According to fire personnel on scene, he admitted to drinking. [EMTs] also stated he had watery eyes . . . ." Deputy Campbell checked the box next to "Judgment impaired" as another ground supporting his warrant application as well as "drug paraphernalia observed at the scene" and an explanation that the "injured passenger had drug equipment in her pocket . . . ," in particular a "one hitter." Finally, Deputy Campbell noted Roe's previous OWI conviction at the end of the warrant application.

A Johnson County magistrate issued the search warrant, and Deputy Campbell obtained a sample of Roe's blood through a nurse at UIHC. The blood sample tested positive for methamphetamine. The State charged Roe via trial information in September 2021 with serious injury by vehicle, a class "D" felony, in

violation of Iowa Code section 707.6A(4) (2020), and OWI, second offense, an aggravated misdemeanor, in violation of Iowa Code section 321J.2(2)(b).

Roe pled not guilty and moved to suppress any evidence of the blood test, arguing that the warrant application was unsupported by probable cause and did not assure the reliability of the named witness and the EMTs and firefighters. The State resisted, and, following an unreported hearing in December 2021, the district court denied the motion. In its June 2022 ruling, the district court explained that there was a substantial basis for finding probable cause because there was no clear external cause of the motorcycle accident, drug paraphernalia was recovered from the scene, Roe admitted to drinking, and Roe had watery eyes.

Roe moved to reconsider or enlarge the ruling, which the State resisted, and the district court overruled. In this motion, Roe argued that the EMTs and firefighters that observed Roe were confidential informants and were not determined to be credible. Roe waived his right to a jury trial and stipulated to a trial on the minutes of testimony. As part of the agreement to stipulate, the State dismissed the serious-injury-by-vehicle charge. Following a trial on the minutes in August 2022, the district court found Roe guilty of OWI, second offense. The district court sentenced Roe to 365 days in jail with all but ninety of those days suspended. Roe now appeals.

## II.    Standard of Review.

We review constitutional issues, such as this challenge to the validity of the search warrant, de novo. *State v. Bracy*, 971 N.W.2d 563, 567 (Iowa 2022). "A search warrant must be supported by probable cause." *State v. Baker*, 925 N.W.2d 602, 613 (Iowa 2019) (citing Iowa Const. art. I, § 8); *see also* U.S. Const.

amend. IV. "The test for probable cause is 'whether a person of reasonable prudence would believe a crime was committed on the premises to be searched or evidence of a crime could be located there.'" *Baker*, 925 N.W.2d at 613 (quoting *State v. Gogg*, 561 N.W.2d 360, 363 (Iowa 1997)).

### III.    Analysis.

Arguing the evidence presented to the magistrate only showed Roe lost control of his motorcycle, Roe maintains there was not probable cause to support issuing a search warrant. Specifically, Roe reduces his challenge to the suppression ruling on these points: (1) no officer presented any objective observations of impairment to the issuing judge; (2) the credibility of the informant and EMTs and firefighters on scene was not established and (3) the drug pipe found on the passenger could not support probable cause of Roe's impairment.

When examining challenges to probable cause to support a warrant, we "do not make an independent determination of probable cause." *State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015). Instead, we merely determine "whether the issuing judge had a substantial basis for concluding probable cause existed." *Id.* (quoting *Gogg*, 561 N.W.2d at 363). We review the information as it was presented to the judge and "do not strictly scrutinize the sufficiency of the underlying affidavit." *Bracy*, 971 N.W.2d at 567 (quoting *McNeal*, 867 N.W.2d at 99). In this analysis, we look only to "that information, reduced to writing, which was actually presented to the [magistrate judge] at the time the application for warrant was made." *McNeal*, 867 N.W.2d at 100 (citation omitted). "[W]e draw all reasonable inferences to support the judge's finding of probable cause and give great deference to the judge's finding"—"[c]lose cases are decided in favor of upholding

the validity of the warrant." *Id.* (first alteration in original) (quoting *Gogg*, 561 N.W.2d at 364); *accord State v. Wenzel*, 987 N.W.2d 473, 482 (Iowa Ct. App. 2022) ("Our preference is to uphold warrants and construe them in a common-sense manner so that we resolve doubtful cases in favor of their validity.").

On Roe's challenge to the magistrate's reliance on the drug pipe found on the passenger, not Roe's person, we agree that that observation, standing alone, does not establish a substantial basis to find probable cause that Roe was impaired while driving. "A search or seizure of a person must be supported by probable cause particularized with respect to the person." *State v. Stevens*, 970 N.W.2d 598, 605 (Iowa 2002) (quoting *Ybarra v. Illinois*, 444 U.S. 85, 91 (1999)). In addition, "[t]his requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." *Gogg*, 561 N.W.2d at 368 (quoting *Ybarra*, 444 U.S. at 91). But while the drug pipe in the passenger's pocket does not lend support for probable cause that Roe was operating while intoxicated, excluding this evidence from consideration is not fatal to the warrant as Roe's other arguments on the lack of probable cause are unconvincing.

First, Roe also argues on appeal that the magistrate should not have accepted the reports of the EMTs and firefighters and the eyewitness to the accident as credible. But the magistrate would have considered that the informant was a person who witnessed the accident and the EMTs and firefighters were called to the scene in an official capacity. Yet, Roe asserts that even accepting the statements by the EMTs and firefighters and the eyewitness as true, there was insufficient evidence to convince a reasonable person that Roe was committing a

crime and thus there was not a substantial basis for the magistrate to conclude that probable cause supported the warrant. Adding to this theory, Roe points out that he did not participate in Standardized Field Sobriety Testing (SFSTs) and the application failed to disclose any detailed observations made by the deputies of impairment. In making this last point, Roe glosses over the serious motorcycle crash that brought him to the attention of the witness and EMTs and firefighters in the first place and that Roe's hospitalization to assess his injuries prevented the deputies from performing SFSTs or conducting interviews until much later. It also ignores Roe's previous OWI conviction. Applying our common-sense analysis, after reviewing the application for a search warrant and the attachments, even if we disregard the passenger's drug pipe found on her person, we determine the information contained in the warrant application constituted a substantial basis to find probable cause.

Here, the issuing magistrate considered the following information in the application for a search warrant: on a clear evening in June 2022, while there were no obvious external causes for it, Roe drove his motorcycle straight off of a dry paved road rather than following the road as it curved. The deputy noted on the application that Roe's judgment was impaired, and the manner of his driving could support that conclusion. Additionally, Roe told firefighters at the scene that he had consumed an alcoholic drink, and the deputies were aware Roe had been convicted of an OWI in the past. Finally, it was observed by EMTs that Roe had watery eyes. As in *Wenzel,* an issuing judge could read the warrant application as requesting a blood draw to investigate the cause of the impaired driving supported by observations of watery eyes, impaired judgment, and poor driving. *See* 987

N.W.2d at 483; *see also, State v. McIver*, 858 N.W.2d 699, 703 (Iowa 2015) (noting aberrant driving can raise a suspicion of impairment).

Regarding the eyewitness, given that she directly observed Roe fail to control his motorcycle on the turn, she was a citizen informant. *See State v. Niehaus*, 452 N.W.2d 184, 189 (Iowa 1990) (defining citizen informant as "a person who is a witness to or victim of a crime"). Our supreme court "has adopted the position that information imparted by a citizen informant is generally reliable." *Id.* We also consider "the very nature of the circumstances under which the incriminating information became known." *Id.* (citing *State v. Post*, 286 N.W.2d 195, 200 (Iowa 1979)). Furthermore, "a named informant's reliability is enhanced where [they] directly witness the criminal activity . . . ." *State v. Baker*, No. 01-1263, 2002 WL 986495, at *3 (Iowa Ct. App. May 15, 2022). For these reasons, we find the eyewitness' description of the crash reliable, and the magistrate properly factored it into the decision to issue a warrant.

Roe attempts to categorize the firefighters and EMTs as confidential informants, but their role as professionals called to the scene to assist as part of their job duties affords them a presumption of credibility. And as noted above, a citizen informant is a person who is a witness to or a victim of a crime, not a professional responding to the accident by way of their duty. In their professional roles, the fire fighters and EMTs had direct, firsthand observations of Roe's watery eyes and were told directly by Roe that he had consumed at least one alcoholic beverage earlier that evening. They were trusted to provide first response and medical care, and there is no evidence that they responded to the scene for any reason other than to do so and within the scope of their role or employment. Thus,

the magistrate also properly relied on their observations and report of Roe's disclosures in issuing the warrant.

Lastly, Roe had a previous conviction for OWI that the magistrate also properly considered in determining probable cause based on alleged impaired driving to issue the search warrant for a sample of Roe's blood, breath, and/or urine. *See McNeal*, 867 N.W.2d at 102; *State v. Hoskins*, 711 N.W.2d 720, 727 (Iowa 2006) (considering an officer's knowledge of suspect's prior drug convictions in determining whether there was probable cause to justify search); *State v. Poulin*, 620 N.W.2d 287, 290 (Iowa 2000) (considering defendant's prior conviction in determining whether there was probable cause to support the issuance of a search warrant).

## IV. Conclusion.

Because the issuing magistrate properly relied on the dynamics of the serious motorcycle crash—potentially caused by impaired judgment, the statements by a citizen informant and EMTs and firefighters describing Roe's admission to drinking and watery eyes, and Roe's past OWI conviction, there was a substantial basis to conclude that probable cause supported the issuance of the search warrant for a sample of Roe's blood. Because the warrant was, therefore, valid, we affirm the district court's denial of Roe's motion to suppress and his conviction.

**AFFIRMED.**