STATE of Iowa, Appellant,

v.

**Lawrence GOGG, Kimberly Mead, Richard Shaw, Mark Drilling and Charles Hobert, Appellees.**

No. 96–387.

Supreme Court of Iowa.

March 26, 1997.

Thomas J. Miller, Attorney General, Susan M. Crawford, Assistant Attorney General, Jerry Folkers, County Attorney, and Mark L. Walk, Assistant County Attorney, for appellant.

Russell Schroeder, Jr. of Schroeder Law Office, Charles City, for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, LAVORATO, and TERNUS, JJ.

TERNUS, Justice.

Pursuant to a warrant, police searched the residence of defendants, Lawrence Gogg and Kimberly Mead, and seized various items of contraband. Criminal charges were brought against Gogg and Mead, as well as three individuals present when the search warrant was executed, defendants Richard Shaw, Mark Drilling and Charles Hobert. Prior to trial, all defendants filed identical motions to suppress, claiming there was no probable cause for issuing the search warrant. The district court sustained the motions and we granted the State's application for discretionary review. We affirm in part, reverse in part and remand.

I. *Background Facts and Proceedings.*

Two thefts occurred at the IBP hog buying station in Charles City, Iowa in the summer of 1995. The first was discovered on July 4, 1995, and the second was discovered on August 1, 1995. Officer Terry Mork investigated these thefts and on August 7, 1995, presented an application for a search warrant to the district court based on information he had obtained from a confidential informant.

Appended to the search warrant application were three attachments: (1) a checklist completed by Officer Mork concerning the reliability of the confidential informant; (2) a list of the property to be seized; and (3) an affidavit signed by Officer Mork reciting the factual basis for issuance of the search warrant. An assistant county attorney reviewed and signed the affidavit; it was then presented to a district court judge who issued the warrant. The warrant authorized the search of a home where Gogg and Mead lived.

A deputy sheriff executed the search warrant the same day. He seized a powdery substance, drug paraphernalia, telephones and computer equipment. All the defendants were present when the search warrant was executed and all were apparently searched. The record does not reveal what, if anything, was found on their persons.

All five defendants were subsequently charged with conspiracy to manufacture or deliver methamphetamine and possession with intent to deliver methamphetamine. *See* Iowa Code §§ 124.401(1), .401(3) (1995). All defendants except Hobert were also charged with possession of methamphetamine. *See id.* § 124.401(3). In addition, Mead was charged with possession of marijuana, *see id.,* and Gogg and Mead were charged with theft in the second degree, *see id.* §§ 714.1(4), .2(2).

The defendants filed identical motions to suppress claiming the search warrant lacked probable cause because (1) the confidential informant was not reliable, (2) the stolen items were not described with sufficient particularity, (3) there was an insufficient showing of a nexus between criminal activity and the items to be seized, (4) there was no showing of a nexus between the drugs to be seized and the residence to be searched, (5) the information from the confidential informant was stale, and (6) there was no probable cause to search the three defendants who happened to be on the premises when the search warrant was executed. Officer Mork testified briefly at the hearing on these motions. The district court was concerned by the obvious lack of precision in the officer's affidavit and suppressed the evidence. Although the court ruled the confidential informant was reliable, the court concluded the warrant was not supported by probable cause for the reasons urged by the defendants with one exception. That exception was the contention there was not probable cause to search the three defendants who did not reside at the location searched. The district court found it unnecessary to rule on this issue.

We granted the State's application for discretionary review. *See* Iowa R.App. P. 201.

## II. *Scope of Review.*

Because the defendants challenge the search on constitutional grounds, our review is de novo. *State v. Randle,* 555 N.W.2d 666, 668 (Iowa 1996). We do not, however, make an independent determination of probable cause; we merely decide whether the issuing judge had a substantial basis for concluding probable cause existed. *State v. Green,* 540 N.W.2d 649, 655 (Iowa 1995). In determining whether a substantial basis existed for a finding of probable cause, we are "limited to consideration of only that information, reduced to writing, which was actually presented to the [judge] at the time the application for warrant was made." *State v. Godbersen,* 493 N.W.2d 852, 855 (Iowa 1992); *accord Randle,* 555 N.W.2d at 668–69.

## III. *Probable Cause.*

The Fourth Amendment requires a search warrant to be supported by probable cause. U.S. Const. amends. IV, XIV, § 1. The test for probable cause is well established: "whether a person of reasonable prudence would believe a crime was committed on the premises to be searched or evidence of a crime could be located there." *State v. Weir,* 414 N.W.2d 327, 330 (Iowa 1987). Probable cause to search requires a probability determination that "(1) the items sought are connected to criminal activity and (2) the items sought will be found in the place to be searched." *United States v. Edmiston,* 46 F.3d 786, 789 (8th Cir.1995); *see Weir,* 414 N.W.2d at 330. The issuing judge "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information," probable cause exists. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983); *accord State v. Hennon,* 314 N.W.2d 405, 407 (Iowa 1982). In doing so, the judge may rely on "reasonable, common sense inferences" from the information presented. *See Green,* 540 N.W.2d at 655.

The same approach is followed in determining whether evidence seized pursuant to a warrant must be suppressed; the

affidavit of probable cause is interpreted in a common sense, rather than a hypertechnical, manner. *Gates*, 462 U.S. at 232, 103 S.Ct. at 2329, 76 L.Ed.2d at 544; *Green*, 540 N.W.2d at 655. In addition, we draw all reasonable inferences to support the judge's finding of probable cause, *State v. Padavich*, 536 N.W.2d 743, 747 (Iowa 1995), and give great deference to the judge's finding, *Green*, 540 N.W.2d at 655. Close cases are decided in favor of upholding the validity of the warrant. *Godbersen*, 493 N.W.2d at 854–55; *Hennon*, 314 N.W.2d at 407. If a warrant is held to permit places to be searched or items to be seized for which probable cause is lacking, the warrant is nevertheless valid for those places and items described for which probable cause exists. *Randle*, 555 N.W.2d at 671; 2 Wayne R. LaFave, *Search and Seizure* § 4.6(f), at 580–83 (1996) [hereinafter "LaFave"].

Before we address the State's challenges to the court's suppression ruling, we first determine the record upon which our review is based. That requires an assessment of the confidential informant's credibility which the defendants attacked in the district court and again contest on appeal.

### IV. *Confidential Informant.*

In concluding probable cause for the warrant existed, the issuing judge made a finding on the endorsement to the warrant application that the information supplied by the confidential informant was credible because "[s]worn testimony indicates this informant has given reliable information on previous occasions." *See* Iowa Code § 808.3 (requiring written determination of credibility of informant's information).[1] The issuing judge also wrote on the endorsement that "Officer Mork indicated the confidential informant has given reliable information on several prior occasions." The judge's finding of credibility was presumably based on (1) Officer Mork's statements to the issuing judge when the application was presented to the court, and (2) his representations in one of the attachments to the warrant application that the confidential informant had supplied information in the past on eight occasions and had not given false information on these occasions.

At the hearing on the defendants' motions to suppress, Officer Mork testified the information supplied by the informant had been verified in only two instances and the information provided by the informant had never led to an arrest or a conviction. The defendants contend, based on this testimony, that Officer Mork's statement to the issuing judge that the confidential informant had given reliable information on several occasions in the past is inaccurate. If Officer Mork intentionally or recklessly made a false statement, the court may not consider it in assessing probable cause. *See State v. Seager*, 341 N.W.2d 420, 427 (Iowa 1983) (holding intentionally false or false statements made with a reckless disregard for the truth must be excised from the application). The defendants also argue that even if Officer Mork's statement is not inaccurate, there was not a substantial basis in the record before the issuing judge to support a finding of the informant's credibility.

A. *Accuracy of Officer Mork's statement to issuing judge.* The defendants bear the burden of establishing an intentional or reckless misrepresentation. *State v. Paterno*, 309 N.W.2d 420, 425 (Iowa 1981). In deciding this issue, we may consider all relevant facts and circumstances. *State v. Post*, 286 N.W.2d 195, 202 (Iowa 1979).

Contrary to the defendants' view of the record, we perceive no conflict between Officer Mork's statement to the issuing judge and his testimony at the suppression hearing. Nothing Officer Mork said at the suppression hearing was at odds with his representation that the confidential informant had given reliable information on several occasions in the past. The fact that the information had been verified on only two occasions does not mean

---

1. Iowa Code § 808.3 states

 [I]f the grounds for issuance are supplied by an informant, the magistrate ... shall include a determination that the information appears credible either because sworn testimony indicates that the informant has given reliable information on previous occasions or because the informant or the information provided by the informant appears credible for reasons specified by the magistrate.

the informant's information on the other six occasions was not reliable. The same can be said for the fact that the information had not led to an arrest or conviction. Consequently, we perceive no misrepresentation by Officer Mork and will consider his statement that the informant had provided reliable information on several occasions in the past in deciding whether there is a substantial basis for the issuing judge's determination that the confidential informant was credible.[2]

 B. *Finding of credibility.* That brings us to the defendants' secondary assertion that the facts before the issuing judge did not support a finding that the informant was reliable and credible. The information provided to the issuing judge revealed the informant had supplied information on several prior occasions and had never been shown to have provided false information. *See Hennon,* 314 N.W.2d at 408 ("The statement that the informant had not given false information in the past also supports a finding of reliability."). There is no requirement that an informant's information lead to an arrest or conviction before a judge may find the informant credible, as implied by the defendants. *See id.* at 407–08 (finding informant reliable even though no arrests or convictions had resulted from information supplied by the informant previously).

 In addition to the favorable track record of this informant, there were other indicia of the informant's reliability. The information he provided concerning the stolen equipment was not public knowledge and the informant personally saw Gogg and Mead in possession of methamphetamine. *See Weir,* 414 N.W.2d at 332 (stating court may consider numerous factors reflecting on the informant's credibility, including "whether the information was public knowledge" and "whether the informant directly witnessed the crime or fruits of it in the possession of the accused"); *State v. Sykes,* 412 N.W.2d 578, 582 (Iowa 1987) (holding the basis of the informant's knowledge is an important con-

sideration in addition to the informant's record of reliability). We agree with the district court that the warrant application and its attachments sufficiently demonstrated the credibility of the confidential informant. We now consider the State's arguments for reversal.

V. *Sufficiency of Evidence of Nexus Between Criminal Activity, the Things to Be Seized, and the Place to Be Searched.*

 As noted above, the judge issuing the warrant must believe evidence of a crime will be found on the premises to be searched. This nexus between criminal activity, the items to be seized and the place to be searched " 'can be found by considering the type of crime, the nature of the items involved, the extent of the defendant's opportunity for concealment, and the normal inferences as to where the defendant would be likely to conceal the items.' " *Randle,* 555 N.W.2d at 671 (quoting *State v. Groff,* 323 N.W.2d 204, 212 (Iowa 1982)).

The district court sustained the defendants' motions to suppress in part because it concluded there was an insufficient showing the property seen by the informant was in fact stolen property and because there was an insufficient showing the methamphetamine observed in the possession of Gogg and Mead would be found at the location to be searched. We discuss the nexus requirement separately with respect to the stolen property and the drugs.

A. *Stolen property.* Officer Mork stated in his affidavit that the confidential informant advised him in a phone conversation

> that a computer matching the description of the one taken from the IBP Incorporated hog buying station was seen at a residence located at 215 Main Street, Orchard, Iowa. Particularly, an Excalibur modem was seen that is the same name and type of modem taken in the IBP burglary.

---

2. The defendants also complain that the district court, in ruling on their motions to suppress, improperly relied on Officer Mork's testimony at the suppression hearing that he had known the confidential informant for five to six years. This

information was not presented to the issuing judge. Therefore, the district court should not have relied on it and we will not consider it on appeal. *State v. Thomas,* 540 N.W.2d 658, 662 (Iowa 1995); *Godbersen,* 493 N.W.2d at 855.

Also seen at the same residence was at least one telephone matching the description of phones taken at each burglary. The district court criticized Officer Mork's affidavit because there was no showing the items observed were unique or unusual; consequently, because computer equipment and phones are items commonly found in residences, there was no reason to think the items seen at 215 Main Street were stolen from IBP. We agree with the district court's conclusions.

Where items to be seized are not unique, mere similarity to property involved in a crime will not support probable cause. *Seager*, 341 N.W.2d at 427. In *Seager*, we held the similarity of a gun and ammunition to those used in a murder did "not suggest any measurable degree of probability that the defendant's rifle was the murder weapon." *Id.* We concluded it only created a suspicion which would warrant further investigation. *Id.*

The situation here is similar. The property observed by the confidential informant included a Compaq computer, an Excalibur modem and a white Panasonic cordless telephone.[3] Computers and phones are commonly found in personal residences. Moreover, the affidavit lacked any information to indicate the particular ones seen at the Gogg/Mead residence were unique in some way. Other than the similarity of these items to property stolen from IBP, there are no facts or circumstances linking these items to the burglaries. Under this record, we must conclude, as did the district court, that the warrant lacked probable cause to believe the property seen by the informant was stolen. *See Seager*, 341 N.W.2d at 427 (fact that rifle and ammunition on premises to be searched

was of same type as gun and ammunition used in murder was insufficient to establish nexus with homicide).[4]

B. *Drugs.* The defendants claim Officer Mork made an insufficient showing that drugs would be found at the residence to be searched. They argue (1) there was no specific statement in the affidavit that Gogg and Mead possessed methamphetamine at the address to be searched, and (2) there was no specific statement in the affidavit that the address to be searched was the residence of Gogg and Mead. The defendants assert that one of these statements is necessary to show a nexus between drugs and 215 Main Street.

In his affidavit, Officer Mork stated the confidential informant saw Gogg and Mead "in possession of 2 plastic bags of powder substance, believed to be methamphetamine." This statement directly followed a description of the stolen items seen at "the residence located at 215 Main Street." The informant's description of the drugs he observed is followed by a summary of information provided by another police officer "that over the course of the past few months, officers in Mitchell County have received numerous complaints from several citizens in Orchard concerning the volume of traffic at the Gogg/Mead residence." No location is mentioned in this recitation of the informant's and authorities' observations other than the residence of Gogg and Mead.

We think the issuing judge could reasonably infer from the context within which the statements concerning drugs were made that the drugs, like the stolen property, were seen at the residence located at 215 Main Street. Additionally, the issuing judge could reasonably infer from the affidavit that this residence was the home of Gogg and Mead. The supporting affidavit expressly refers to the "Gogg/Mead residence," and the only resi-

---

**3.** Although, with the exception of the modem, Officer Mork did not describe the computer and telephone seen by the informant, he did state they matched the computer and telephone taken in the burglaries, namely a Compaq computer and Panasonic phone. Although white Panasonic, two-line telephones were taken in the IBP burglaries in addition to white Panasonic cordless telephones, Officer Mork failed to specify in his affidavit whether the phone seen by the informant was a two-line telephone or a cordless telephone. Therefore, we assume the informant observed the more common, cordless telephone.

*Cf. State v. Birkestrand*, 239 N.W.2d 353, 358 (Iowa 1976) (where affidavit fails to specify date of observations, court assumes most remote date).

**4.** The defendants also complain that the computer equipment and telephones were not sufficiently described. Because we hold the warrant lacked probable cause to seize this property in the first instance, we need not address the adequacy of the description of these items.

dence identified in the affidavit is the 215 Main Street address in Orchard, Iowa.

■ We conclude there are three facts shown by the application and attachments that support a conclusion drugs would be found at the location to be searched: (1) Gogg and Mead were seen in possession of methamphetamine at that location; (2) the location was the residence of Gogg and Mead; and (3) citizens had been complaining about the large volume of traffic in and out of this residence. The district court erred in holding there was not a substantial basis to support the issuing judge's finding of a nexus between the drugs and related items to be seized and the place to be searched.

VI. *Staleness.*

■ Because probable cause requires a reasonable belief that evidence of a crime will be found on the premises to be searched, it is important the information upon which this belief is based be current and not remote in time. *Randle,* 555 N.W.2d at 670 ("Allegations of criminal conduct may be so distant in time as to provide no probable cause for a warrant."). The passage of time alone is not determinative; whether information is stale depends on the circumstances of the case. *Hennon,* 314 N.W.2d at 406. Some of the circumstances which are relevant include (1) the character of the crime (whether an isolated event or an ongoing activity), *Randle,* 555 N.W.2d at 670, (2) the character of the criminal (nomadic or stable), *Andresen v. State,* 24 Md.App. 128, 331 A.2d 78, 106 (1975), *aff'd sub nom. Andresen v. Maryland,* 427 U.S. 463, 96 S.Ct. 2737, 49 L.Ed.2d 627 (1976), (3) the nature of the thing to be seized (perishable, easily destroyed, not affixed and easily removable, or of enduring utility to the holder), *State v. Bean,* 239 N.W.2d 556, 559 (Iowa 1976); *State v. Gillespie,* 503 N.W.2d 612, 616 (Iowa App.1993), and (4) the place to be searched (mere criminal forum of convenience or secure operational base), *Andresen v. State,* 331 A.2d at 106. *See* LaFave § 4.5(e), at 543–44.

■ Here the affidavit fails to specify the exact time of the informant's observation of the stolen property and drugs. This failure need not be fatal, however; other facts in the affidavit can show the timeliness of the information. *Hennon,* 314 N.W.2d at 407. To test the timeliness of information contained in an affidavit, the observations are assumed to have occurred on the most remote date within the time period mentioned in the affidavit. *State v. Birkestrand,* 239 N.W.2d 353, 358 (Iowa 1976). Because we have already determined the warrant lacked probable cause to search for stolen property, we discuss the staleness issue only as it relates to the informant's observation of methamphetamine at the residence.

■ Drugs are readily consumable or transferable and therefore, where there is only an isolated observance of a drug offense, probable cause diminishes quickly. *See Randle,* 555 N.W.2d at 670 ("When there is an 'isolated violation [of the law],' 'probable cause quickly dwindles with the passage of time.'"). But where the information presented to the issuing judge shows ongoing drug-related activities, the passage of time is less problematic because it is more likely that these activities will continue for some time into the future. *See id.* Whether the criminal activity is continuous or isolated does not matter if the passage of time between the informant's observations and the issuance of the warrant is not significant. *Id.* Thus, our first task is to decide whether there was a significant lapse of time between the informant's observation of methamphetamine in the possession of Gogg and Mead and the issuance of the search warrant.

As noted above, Officer Mork did not expressly state in his affidavit when the confidential informant saw Gogg and Mead in possession of methamphetamine. He first described the computer equipment seen at the residence; he then stated a telephone matching the stolen telephones was "also seen"; and he concludes by saying that Gogg and Mead "were in possession of 2 plastic bags of powder substance believed to be methamphetamine." A reasonable inference from Officer Mork's recitation of his conversation with the informant is that the informant observed the drugs on the same occasion he saw the stolen property. There is nothing in the affidavit to indicate otherwise. That raises the question: when did the informant observe the stolen property?

The IBP burglaries occurred on or about July 4, 1995 and August 1, 1995. The affida-

vit states Officer Mork received a phone call from the confidential informant on August 6, 1995, in which the informant reported seeing suspected stolen property from *both* burglaries. Thus, the relevant time frame for the informant's observations is between the second burglary on August 1, 1995, and the informant's call to Officer Mork on August 6, 1995. Under the rule recited above, we assume the informant's observations of drugs occurred on the most remote date, August 1, 1995, six days before the search warrant was issued.

In the *Paterno* case, we held that probable cause existed where controlled substances were observed on a single occasion and the search warrant was executed seven days later. 309 N.W.2d at 424. We reach the same conclusion here: the six-day-old observations of the informant were not stale and justified the issuing judge's belief that evidence of drug offenses could be found at the premises to be searched. *See People v. Mesa,* 14 Cal.3d 466, 121 Cal.Rptr. 473, 476, 535 P.2d 337, 340 (1975) (probable cause where informant saw heroin in premises within past six days).

VII. *Search Of All Persons On The Premises.*

The warrant in this case authorized a search of all persons at 215 Main Street at the time of the warrant's execution. As a general rule, a search warrant requires probable cause as to each person at a private residence. *State v. Jamison,* 482 N.W.2d 409, 412 (Iowa 1992). The United States Supreme Court has articulated the probable cause requirement in the following way:

> Where the standard is probable cause, a search or seizure of a person must be supported by probable cause *particularized with respect to that person.* This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be.

*Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 342, 62 L.Ed.2d 238, 245 (1979) (emphasis added); *accord* LaFave § 4.5(e), at 543–44.

The affidavit submitted by Officer Mork recites no facts to justify a search of everyone at 215 Main Street. We note the affidavit does not mention the anticipated presence of persons other than Gogg and Mead nor does it specify why any third persons, if present, would probably have evidence of a crime on their person. Although the issuing judge could reasonably have inferred from the affidavit that illegal drug sales were made at this location, there are no statements that give rise to an inference that all persons on the premises would necessarily be involved in this activity. Therefore, the warrant lacks probable cause to search all persons in the residence. Any evidence seized during the searches of Shaw, Drilling and Hobert must be suppressed.

VIII. *Good Faith Exception.*

The State claims that even if the warrant is invalid in some respect, the evidence found in the search should be admissible under the good faith exception recognized in *United States v. Leon,* 468 U.S. 897, 909, 104 S.Ct. 3405, 3413, 82 L.Ed.2d 677, 689–90 (1984). Before we address this claim, we must consider whether the State preserved this argument even though it did not raise this issue in the district court.

It is elementary that we do not determine questions of fact nor do we consider issues not presented to or decided by the district court in the first instance. *State v. Halliburton,* 539 N.W.2d 339, 342 (Iowa 1995) (party cannot seek reversal on appeal based on contention not presented to the district court); *State v. Ashburn,* 534 N.W.2d 106, 109 (Iowa 1995) (defendant did not preserve issue for appeal where he did not raise the issue before the trial court). During the proceedings below, the State relied exclusively on its position the warrant was supported by probable cause; it did not raise the good-faith exception which it now tenders. Therefore, the State did not preserve error on the applicability of the exception.

IX. *Summary.*

After our review of the record, we share the district court's view that the affidavit supporting the search warrant application

lacks the meticulousness that a judge would hope to find in such a document. Nevertheless, viewing the statements in the affidavit in a common-sense manner, drawing all reasonable inferences from those statements and giving deference to the judgment of the issuing judge, we respectfully disagree with the district court's conclusion that the warrant lacked probable cause to search the residence for drugs and related items. We reverse the district court's ruling suppressing this evidence.

As to the search for stolen property, however, we affirm the district court's suppression order; the application and supporting attachments failed to establish probable cause to believe the items seen in the residence were stolen. We also hold there was no probable cause to support that portion of the warrant authorizing a search of all persons present at the residence. We suppress any evidence seized from the persons of Shaw, Drilling and Hobert.

Costs are taxed fifty percent to the State and fifty percent to the defendants.

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**