# IN THE COURT OF APPEALS OF IOWA

No. 15-1376
Filed January 11, 2017

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DAVID JOSEPH MOFFITT,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Polk County, David L. Christensen

(motion to suppress) and Richard G. Blane II (trial), Judges.


        Defendant appeals his convictions for first-degree murder and first-degree

burglary.  **AFFIRMED.**



        J. Keith Rigg, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Darrell Mullins, Assistant Attorney

General, for appellee.



        Heard by Potterfield, P.J., and Doyle and Bower, JJ.  Blane, S.J., takes no

part.

**BOWER, Judge.**

David Moffitt appeals his convictions for first-degree murder and first-degree burglary.  We find the district court properly denied Moffitt's motion to suppress, based on his claim the applications for search warrants for his home, including computers and cell phone, were not supported by probable cause.  We affirm Moffitt's convictions.

## I.      Background Facts & Proceedings

Moffitt was charged with murder in the first degree, in violation of Iowa Code section 707.2 (2013) and burglary in the first degree, in violation of section 713.3.  The State alleged Moffitt broke into the home of Justin Michael on May 8, 2014, and fatally shot him.

The State applied for a warrant to search Moffitt's home.  The following information was included in an affidavit attached to the search warrant application.  Michael was fatally shot in the head at his home in Grimes shortly before 3:30 a.m. on May 8, 2014.  Michael's mother, Marie Michael, who had been visiting, stated a subject wearing all dark clothing came into her room and shone a "red laser" type light on her.  The subject left her room and seconds later she heard gunshots.  Officers found .9mm TulAmmo shell casings at the scene.

Angela VerHuel, who was the victim's fiancé, stated she previously had a sexual relationship with Moffitt from March to June 2013.  She ended the relationship with Moffitt when she began her relationship with Michael.  VerHuel stated "Moffitt was very angry and upset and sent her a few vulgar texts but nothing threatening.  One of those texts indicated he was not ready to let her go."

In August 2013, VerHuel learned Moffitt was working in the same department at Wells Fargo as Michael. She later learned Moffitt was let go from his employment.

At about 4:00 a.m., an off-duty Boone police officer observed a car in the ditch by Highway 141 near Granger and stopped to render assistance. A person, who identified himself as Dave, stated he needed a ride. Dave was not wearing a shirt when the officer stopped; Dave first put on a black shirt, then took it off and put on a white shirt. Dave placed the black shirt in a black case and put the case in the trunk of his vehicle. The officer called dispatch, then left. A Polk County deputy arrived shortly thereafter. The deputy determined Dave was David Moffitt, the vehicle was registered to him, and he resided in Pleasant Hill. At that time, Moffitt was wearing all white clothes and particles from weeds were clinging to his clothing. Moffitt stated he left his cell phone at home. The deputy issued several citations and assisted Moffitt to call a cab to take him home. Moffitt took a cab to Pleasant Hill.

Officers searched the area near where Moffitt's car was located. They found a box containing new earmuffs of a type used by those shooting firearms; an Amazon Kindle, which had "Grimes" typed in the search bar; a receipt dated March 14, 2014, in the name of Wegener;[1] and two magazines containing .9 mm TulAmmo ammunition. A search of Moffitt's vehicle did not reveal the black shirt or the black case he put the shirt into.

---

[1] Later evidence showed Moffitt purchased the firearm used in the shooting under the name "Andy Wegener." Wegener, who was a former boyfriend of VerHuel, was not involved in the purchase of the firearm.

A judge granted the search warrant application. The State executed the search warrant for Moffitt's home and several items were seized. A second search warrant was obtained for a different location. The State sought a third search warrant, stating it had not seized the computers or cell phones at Moffitt's residence. This application was approved as well. During the execution of the third search warrant, officers observed a red storage tub without a lid, which they believed contained items related to the crime. A fourth search warrant application sought to search Moffitt's home for these items, which included a gun scope, a laser scope, and .9 mm TulAmmo shell casings. A fifth application sought to search the Facebook accounts of several people associated with the homicide.

Moffitt filed a motion to suppress, claiming the first and third applications did not provide probable cause for the search warrants, as they did not provide a nexus between the alleged criminal activity, the items sought to be seized, and the place to be searched. The district court denied the motion to suppress. After a jury trial, Moffitt was convicted of first-degree murder and first-degree burglary. He now appeals.

## II.    Search Warrants

Moffitt's motion to suppress claimed there was no probable cause for the issuance of the search warrants for his home, and in particular, he claimed there was no probable cause for the search of his computers or cell phone. He stated there was not a nexus between the criminal activity, the things to be seized, and the place to be searched. He stated because the first search warrant was

improper, the subsequent search warrants, which were based on information obtained in executing the first search warrant, were also improper. He requests the suppression of items seized from his home, including information obtained from his computers and cell phone.

The Fourth Amendment provides search warrants should be issued, "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see also* Iowa Const. art. I, § 8; Iowa Code § 808.4. In general, we review claims of a constitutional dimension de novo, considering the totality of the circumstances. *State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015). When addressing a challenge to a finding there was probable cause to support a search warrant, "[h]owever, we do not make an independent determination of probable cause; rather, we determine 'whether the issuing judge had a substantial basis for concluding probable cause existed.'" *Id.* (quoting *State v. Gogg*, 561 N.W.2d 360, 363 (Iowa 1997)). "In so doing, we examine only the information actually presented to the judge." *Id.*

The Iowa Supreme Court has set out the following guidelines:

> "In determining if evidence seized pursuant to a warrant should be suppressed, 'the affidavit of probable cause is interpreted in a common sense, rather than a hypertechnical, manner.'" "[W]e draw all reasonable inferences to support the judge's finding of probable cause and give great deference to the judge's finding." "Close cases are decided in favor of upholding the validity of the warrant." In assessing whether a substantial basis existed to find probable cause, we are "'limited to consideration of only that information, reduced to writing, which was actually presented to the [judge] at the time the application for warrant was made.'"

*Id.* at 100 (citations omitted).

The court has also stated:

> The test for probable cause is well established: "whether a person of reasonable prudence would believe a crime was committed on the premises to be searched or evidence of a crime could be located there." Probable cause to search requires a probability determination that "(1) the items sought are connected to criminal activity and (2) the items sought will be found in the place to be searched." The issuing judge "is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information," probable cause exists. In doing so, the judge may rely on "reasonable, common sense inferences" from the information presented.

*Gogg*, 561 N.W.2d at 363 (citations omitted). "A probable cause finding rests on a nexus between the criminal activity, the place to be searched, and the items to be seized." *State v. Hoskins*, 711 N.W.2d 720, 726 (Iowa 2006).

We consider only the information presented to the judge at the time of the search warrant application. *McNeal*, 867 N.W.2d at 99. Therefore, we will discuss only the information found in the applications and attachments to the applications signed by Deputy Robyn Bartholomew of the Polk County Sheriff's Office, as set out above.

**A.** The first search warrant application sought to search Moffitt's home for firearms and accessories and dark clothing, blood-stained clothing, or white clothing. A judge approved the application, stating, "I find the information contained in the application and attachments establishes probable cause to believe the items listed are located in the places indicated and that the information justifies the issuance of a search warrant and, therefore, I do issue a search warrant."

In ruling on Moffitt's motion to suppress, the district court found there was probable cause for the first warrant because Moffitt was connected to the murder scene, as about thirty minutes after the offense he was found near Granger and he had a prior relationship with VerHuel. The court noted an officer observed Moffitt put on a black shirt, take off the black shirt and put on a white shirt, then place the black shirt in a black case, which he put in the trunk of his vehicle. Moffitt subsequently returned to his home. The court concluded, "there was a fair probability that evidence from the murder would be located" at Moffitt's home in Pleasant Hill. The court noted the black case was not found in Moffitt's car and there was a reasonable inference he took it with him to his home.

Moffitt points out the attachment to the search warrant application does not specifically state Moffitt took anything with him when he took a cab to his home. The attachment does not address whether the deputy sheriff or the cab driver who were present observed Moffitt take any items with him in the cab.[2] The court noted an officer observed Moffitt placing a black shirt in a black case, then placing the case in the trunk of his vehicle. When officers later looked in the vehicle, however, they did not find the case or the shirt. The court made "'reasonable, common sense inferences' from the information presented," Moffitt might have taken the black case, or other items connected with the crimes, with him to his home.[3] *See Gogg*, 561 N.W.2d at 363 (citation omitted).

---

[2] Moffitt notes during the criminal trial both the deputy and the cab driver testified they did not observe Moffitt taking anything with him in the cab. Of course, we must rely only on the information available to the judge at the time the search warrant was granted, not evidence arising during the course of the criminal trial. *See McNeal*, 867 N.W.2d at 99.

[3] Although not mentioned by the district court, we note the search warrant application sought Moffitt's white clothing, as well as his dark clothing. The application notes the

In addition, evidence connects Moffitt to the offense. Moffitt previously had a romantic relationship with VerHuel and was upset when she broke up with him and began dating Michael. Moffitt told VerHuel he was not ready to let her go. About thirty minutes after Michael was shot, Moffitt drove his vehicle into a ditch not too far from Grimes. Items related to the shooting, including .9 mm TulAmmo ammunition, which matched shell casings found at the scene of the homicide, were found near where Moffitt crashed his vehicle.

After drawing all reasonable inferences to support the judge's finding of probable cause, we determine the issuing judge had a substantial basis for concluding there was probable cause to search Moffitt's home for the items listed in the first search warrant application. *See McNeal*, 867 N.W.2d at 100.

**B.** Moffitt claims the district court should have suppressed the evidence found on his cell phone and computers because the search warrant applications did not provide probable cause for the search and seizure of these items. He states there is insufficient evidence in the search warrant application to show there were computers at his home, or if there were computers, that they contained information relevant to the homicide.

The first search warrant application sought computers or cell phones connected to Moffitt "in reference to any and all information relating to the purchase or possession of guns, gun accessories, or gun ammunition," as well as information about VerHuel, Michael, Michael's home, or the surrounding area

---

white clothing worn by Moffitt had weed particles attached and he wore the white clothes when he went to his home. It is possible officers could have connected the white clothing and the weed particles to the area where the ammunition and other items pertaining to the homicide were found. This is an additional element connecting the homicide, Moffitt's home, and the clothing located there.

and related data from cell phones and computers. The attachment to the application stated, "This affiant knows from training and experience that cell phones, computers and digital devices often contain GPS information, photographs, internet search history, contacts and other information that could be relevant to this investigation."

Although the first search warrant permitted the seizure of computers, no computers were taken from Moffitt's home during the execution of the warrant. A third search warrant application was prepared, which contained all of the information in the first application, except the statement about the affiant's knowledge about cell phones, computers, and digital devices. The third application included the additional information two computers had been observed during the execution of the first search warrant. The third application sought to search Moffitt's home for computers and cell phones. A judge approved the third application, and Moffitt's computers were seized.

The district court found there was probable cause in the first application to support a search warrant for computers and cell phones at Moffitt's home. The court found:

> [T]here was evidence that [Moffitt] used electronic devices to perform research for the murder of Mr. Michael. Again an Amazon Kindle which had Grimes typed into the search bar was found in the area that Mr. Moffitt drove his car into a ditch and the victim's house was located in Grimes. From this a reasonable inference can be made that Mr. Moffitt used electronics to perform research necessary for the murder. Therefore, there is a fair probability that evidence of the crime was on other electronics owned by Mr. Moffitt.

(Citation omitted). The court found Moffitt's arguments concerning the third search warrant application mirrored his arguments concerning the first application, and the court determined there was probable cause for the same reasons.

We determine the issuing judge had a substantial basis for concluding probable cause existed to search Moffitt's home for computers and cell phones. As noted in the district court's ruling on the motion to suppress, an electronic device—an Amazon Kindle—was found near where Moffitt drove his car into the ditch. This electronic device had the term, "Grimes," typed in the search bar, which was where the homicide occurred. The judge made a reasonable, common-sense inference Moffitt's home might contain computers or other electronic devices containing information relevant to the homicide. "[W]e draw all reasonable inferences to support the judge's finding of probable cause and give great deference to the judge's finding." *Gogg*, 561 N.W.2d at 364 (citations omitted).

The district court did not separately address Moffitt's cell phone, but we note the search warrant applications stated Moffitt told a deputy he left his cell phone at home. There was also information in the application "Moffitt was very angry and upset and sent [VerHuel] a few vulgar texts but nothing threatening. One of those texts indicated he was not ready to let her go." Thus, there was probable cause to search Moffitt's home for his cell phone in order to retrieve information about his text messages with VerHuel, which may have been relevant to the homicide.

We determine the district court properly denied Moffitt's motion to suppress. We affirm his convictions for first-degree murder and second-degree burglary.

**AFFIRMED.**