# IN THE COURT OF APPEALS OF IOWA

No. 19-0277
Filed November 6, 2019

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**GREGORY JOHN SCHULDT,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Jasper County, Thomas P. Murphy (suppression) and Randy V. Hefner (sentencing), Judges.

A defendant appeals his conviction for intimidation with a dangerous weapon and his sentencing order of restitution. **CONVICTIONS AFFIRMED; SENTENCES AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**

Mark C. Smith, State Appellate Defender, (until withdrawal) and Shellie L. Knipfer, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., Greer, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**BLANE, Senior Judge.**

Gregory Schuldt appeals the denial of his motion to suppress in which he challenged the district court's issuance of three separate search warrants sought by Newton police in their investigation of a drive-by shooting.  Schuldt also contests the district court's imposition of court costs without determining his reasonable ability to pay.  Based upon our review, the district court had a substantial basis for concluding probable cause existed to issue the warrants.  But the court failed to apply the statutory requirements for restitution.  We affirm the convictions but reverse the sentences in part and remand for entry of a final restitution order.

## I.  Procedural history and factual background.

On January 17, 2018, the court found domestic abuse had been committed by Gregory Schuldt upon Nicole Byrd and issued a no-contact order (NCO).  On January 17, Nicole's father Daniel Byrd had a verbal confrontation with Schuldt.[1] On Sunday, January 28, around 9:25 p.m., a light-colored sedan drove past the Byrd home in Newton, and eight shots were fired into the house.  Both Daniel and his wife were present in the home at the time.  The Newton police were called, and Daniel advised that there was only one person with whom he had any recent problems, that being Schuldt.

After their initial investigation, on February 5, Newton police sergeant Chris WIng applied for a search warrant to obtain cell phone account information from U.S. Cellular, Schuldt's cell phone provider, for his assigned cell phone number.

---

[1] Daniel mentioned to law enforcement officers his concern about his grandson, Nicole's child, growing up in a violent environment and spoke of obtaining custody.

In support of the application, Sergeant Wing supplied the following information garnered from their investigation to that point, which we summarize here.

On January 28, the home of Daniel and Debora Byrd in Newton was shot at eight times in a drive-by. The house belonged to the parents of Schuldt's former girlfriend, Nicole Byrd, who on January 17 had obtained a NCO against Schuldt. On the evening of the shooting, Schuldt had been at a bar in Des Moines with Stephanie Belieu. At around 8:25 p.m., Schuldt asked her for a ride to get his car. When she refused, Schuldt made a call on his cell phone to get a ride. Schuldt reunited with Belieu at a different bar in Des Moines at 10:00 p.m. He was gone long enough to go to Newton and return. At around 10:45 p.m., Schuldt asked Belieu if he could hide a gun in her car. She took Schuldt out to her vehicle and watched him unload a handgun and deposit it in the car. When they left the bar, Schuldt retrieved the gun.

Around 8 a.m. the morning after the shooting, Schuldt posted on his Facebook page, "Underestimate me. That'll be fun." Schuldt also sent a Facebook message to Nicole Byrd asking what she had told the police during her interview, obviously referencing the drive-by shooting. And Daniel believed Nicole was still seeing Schuldt despite the NCO. Another family member, Destiny Lautenbach, who is friends with Schuldt on Facebook, provided snapshots of his postings.

When Schuldt returned a call to Sergeant Wing, the officer verified Schuldt's cell phone number. Schuldt reported to Wing he had been at a bar the evening of the shooting. Wing asked if Schuldt had been in Newton, and without the officer mentioning the shooting, Schuldt replied he had nothing to do with the shooting. When confronted with the fact that the officer had not mentioned the shooting,

Schuldt said he must have heard it from his brother. Wing had spoken earlier to Schuldt's brother, Joshua, but had not mentioned the shooting specifically. Wing believed Schuldt was providing false information.

In the application for the first search warrant, Sergeant Wing stated he "believed that evidence of the crime of Intimidation with a Dangerous Weapon [in violation of Iowa Code section 708.6 (2018)] will be found on the Servers belonging to US Cellular." Specifically, Wing pointed to "records related to subscriber information, . . . outbound and inbound call detail, connection times and dates, internet routing information . . . , and message content that may assist in the identification of person/s accessing and utilizing the account." In addition, Wing sought "records that include cell site information and Global Positioning System (GPS) location. . . . [allowing officers] to determine the area or physical location of the individual using the cell phone number . . . which according to corroborating sources" belonged to Schuldt.

On February 6, in the second warrant application, seeking to recover information specifically from Schuldt's phone, Detective Randall Camp stated,

> It is probable that information on Schuldt's cell phone . . . will show who picked him up at the bar and who he contacted later in the night. It is also probable that there will be information on his phone to show who he contacted before and after the shooting incident, as well as text message conversation about the shooting.

Finally, on February 7, in a third application for a search warrant seeking records on Schuldt's Facebook account, Sergeant Wing explained his familiarity with Facebook's functionality, particularly when viewed from an application on a cell phone and asserted it would "allow investigators to establish times, dates and in some instances locations from where the connections were made." Wing also

sought "photos, images, videos, correspondence, documents, [and] personal notes or files . . . relating to the planning, motive, and commission" of the offense of intimidation with a dangerous weapon.

The district court granted all three applications and issued the search warrants. Schuldt filed a motion to suppress "any and all evidence resulting from the three warrants," which the district court denied. Schuldt agreed to a trial on the minutes, and the court found him guilty of intimidation with a dangerous weapon, a class "C" felony, and possession of a firearm by domestic violence offender, a class "D" felony. At sentencing, the court imposed court costs which included restitution for certain incurred costs. Schuldt appeals.

## II. Scope and Standard of Review.

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Brown*, 930 N.W.2d 840, 844 (Iowa 2019) (citation omitted).

We review an order for restitution for correction of errors at law. *State v. Albright*, 925 N.W.2d 144, 158 (Iowa 2019).

## III. Search Warrants.

Schuldt appeals the suppression decision contending the applications for the warrants lacked probable cause and were "nothing more than fishing expeditions for evidence."[2] The district court found,

---

[2] The State first argues Schuldt waived his arguments on probable cause because the district court found an alternative ground on which to deny the motion to suppress when it said, "Regarding cell phone and Facebook data, the court agrees with the State that Defendant had no reasonable expectation of privacy." This statement came at the end of

The court has reviewed the applications and the "totality of circumstances" described therein. Several facts set forth in the applications are pertinent: Defendant's posting to Facebook; Defendant's Facebook messages; Defendant's use of a cell phone; Defendant's possession of a weapon on the night of the shooting; and Defendant's whereabouts.

In 2018, it was reasonable to assume that a person who used Facebook used his/her cell phone to access Facebook. Further, cell phone data might have assisted officers in determining a person's location. The cellphone itself could have been expected to provide evidence of messages or calls connecting Defendant to the incident. Facebook messages or posts could have provided evidence that implicated or exonerated a person.

There was probable cause, described in the applications, to issue the warrants. Given the alleged facts, a reasonable person would believe cell phone data, the cell phone, and Facebook information, would yield evidence. There was a nexus between that which was to be searched (and seized) and the crime.

The Fourth Amendment to the United States Constitution requires probable cause to support a search warrant.[3] *See State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015). Probable cause to issue a search warrant exists when "a person of reasonable prudence would believe a crime was committed on the premises to be searched or evidence of a crime could be located there." *Id.* (quoting *State v. Gogg*, 561 N.W.2d 360, 363 (Iowa 1997)). This requires proof both that "the items sought are connected to criminal activity" and "will be found in the place to be searched." *Id.* (quoting *Gogg*, 561 N.W.2d at 365). Our appellate courts prefer

---

the ruling, after the court had fully analyzed the probable cause arguments. Schuldt argues the court made a ruling on an issue that was not before it. In its resistance to the motion to suppress, the State argued there was no reasonable expectation of privacy in third-party information such as cell phone records and Facebook accounts. But neither party brought it up at the suppression hearing.

In any case, we need not decide whether Schuldt had a reasonable expectation of privacy because we agree with the district court the warrants were based on probable cause.

[3] Although Schuldt raises his claim under both the federal and state constitutions, he does not explain how interpretation under the Iowa Constitution differs. Under such circumstances, our analysis applies to the claims under both constitutions. *See State v. Nitcher*, 720 N.W.2d 547, 553 (Iowa 2006).

search by warrant. *Id.* at 100. Therefore, we do not review the sufficiency of the evidence underlying the warrant. *Id.* We decide only whether "the issuing judge had a substantial basis for concluding probable cause existed." *Id.* (quoting *Gogg*, 561 N.W.2d at 363). We make all reasonable inferences to support the probable cause finding and defer to the judge's findings. *Id.* In a close case, we err on the side of upholding the warrant. *Id.* We are limited to only what information was before the judge at the time they made the decision. *Id.*

Schuldt argues the warrants for the contents of his cell phone and cell phone records from U.S. Cellular lacked probable cause because "[l]aw enforcement only had a mere suspicion that Schuldt was in the area at the time of the offence" and "[k]nowing who picked up Schuldt is not evidence of intimidation with a dangerous weapon." But law enforcement had much more than a mere suspicion that Schuldt was the shooter. Shortly before the shooting, Schuldt had assaulted Daniel's daughter, which resulted in Schuldt facing charges and a NCO. Daniel and Schuldt got into a verbal confrontation that day. After the shooting, Daniel reported Schuldt was the only person who might have wanted to intimidate him with a dangerous weapon. The night of shooting, video evidence and witness reports placed Schuldt at a bar until 8:25 p.m. when he left and did not reappear until 10:00 p.m. The shooting happened at around 9:25 p.m. that night. Officers surmised Schuldt would have had enough time to leave the bar, drive to Newton, carry out the shooting, and return to Des Moines. A witness watched him unload a handgun and place it in the back of her vehicle about an hour after the shooting. When officers asked his whereabouts that evening, Schuldt said he was at a bar and walked home, contrary to the witness report he called someone for a ride. He

also spontaneously mentioned the shooting and explained his brother told him when the officer believed his brother could not have known about it. Whoever Schuldt called from the bar could have driven him to do the shooting or taken him to pick up another car to carry out the shooting, showing a mode of transport and a possible additional witness or accomplice. Such information was discoverable through the cell phone and call records. And cell phone location markers could reveal where Schuldt was located during the time he went unaccounted for, including whether he traveled to Newton, which he had denied. A person of reasonable prudence would conclude the cell phone contents and records could show evidence Schuldt obtained a car that night, drove to Newton, and carried out the drive-by shooting at the Byrd residence. The district court had a substantial basis for concluding probable cause existed to issue the warrants for Schuldt's cell phone.

Schuldt next contends the warrant for his Facebook account records lacked probable cause because the officer did not identify any evidence he expected to find on Facebook. It was evident that Schuldt had a Facebook account. The warrant application identified evidence of times, dates, and locations they expected to find in the Facebook records. They also reported Nicole and Schuldt communicated about the shooting over Facebook Messenger. In addition, evidence in the application indicated Nicole and Schuldt were breaking the NCO together and might be in further communication. And Schuldt placed an ominous or threatening message on his Facebook wall the morning after the shooting that concerned Byrd family members. A reasonably prudent person would conclude further evidence of the crime, including admissions or discussion of Nicole and

Schuldt's motivations or state of mind around the time of the shooting, could be found in his Facebook and Facebook Messenger data. Thus, the district court had a substantial basis for concluding probable cause existed to issue warrants for Schuldt's Facebook account.[4]

## IV. Restitution.

Schuldt next contends the district court erred in ordering him to pay restitution without knowing the amount of the costs. At sentencing, the district court ordered Schuldt to pay a fine, surcharges, and victim restitution to the Byrds in the amount of $1000. It also ordered Schuldt to pay all court costs and court-appointed attorney fees. The court ordered the clerk of court "to assess the exact amount thereof on a continuing basis." As to court-appointed attorney fees, the court found, "[T]he Defendant has the reasonable ability to pay restitution of fees and costs in the amount provided by the State Public Defender or $0.00, whichever is less, and shall pay the same to the Clerk of Court." We interpret this language to mean the court found Schuldt did not have any reasonable ability to pay court-appointed attorney fees.

There are two categories of restitution. *See Albright*, 925 N.W.2d 159. Category one includes victim restitution, fines, penalties, and surcharges and may be ordered without regard to the offender's ability to pay. *Id.* Category two includes court costs, court-appointed attorney fees, and correctional fees and can only be ordered "to the extent the offender has the reasonable ability to pay." *Id.*; *accord State v. Headley*, 926 N.W.2d 545, 553 (Iowa 2019).

---

[4] Because we uphold the warrants, we do not address the State's argument any error was harmless.

Although the court properly assessed category-one restitution, it failed to follow our statutory procedures as explained in *Albright* with regard to the category-two restitution costs. The court made no assessment of Schuldt's reasonable ability to pay court costs but simultaneously concluded Schuldt had no reasonable ability to pay court-appointed attorney fees. This the court cannot do; it must assess the offender's ability to pay all category-two costs together. The court also did not have the amount of court costs before it, instead asking the clerk of court to submit those amounts on a rolling basis. Therefore, we vacate the restitution portion of the sentencing order and remand for further proceedings to determine the full amount of court costs, reassessment of Schuldt's reasonable ability to pay, and entry of a final restitution order.

**CONVICTIONS AFFIRMED; SENTENCES AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**