# IN THE COURT OF APPEALS OF IOWA

No. 23-0508
Filed June 5, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**PATRICK DONOVER SALLIS,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, David P. Odekirk, Judge.

Patrick Sallis appeals the denial of his motion to suppress evidence supporting his conviction for possession of a firearm as a felon and habitual offender. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Vidhya K. Reddy, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Nicholas E. Siefert, Assistant Attorney General, for appellee.

Considered by Schumacher, P.J., Badding, J., and Doyle, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2024).

**DOYLE, Senior Judge.**

Following a bench trial on the stipulated minutes of evidence, Patrick Sallis appeals his conviction for possession of a firearm as a felon and habitual offender. He challenges the denial of his motion to suppress evidence obtained when law enforcement executed a search warrant on his residence and vehicle, arguing the search warrant was not supported by probable cause. Because probable cause supported the search warrant, we affirm.

### I. Background Facts and Proceedings.

On November 1, 2021, Officer Jordan Ehlers of the Waterloo Police Department was assigned to the Violent Crime Apprehenson Team (VCAT) as a detective. He applied for a warrant to search the apartment Sallis shared with his girlfriend and two vehicles registered to the girlfriend. Officer Ehlers alleged he had good reason to believe Sallis possessed "firearms, firearm parts or ammunition, . . . items used in the upkeep or maintenance of firearms, ammunition, safes, locked containers, and ballistic evidence" in those locations.

An addendum to the warrant application explains that VCAT began investigating Sallis in August 2021 for drug distribution and illegal firearm possession. It also states that "[d]uring the last 72 hours," a confidential informant "advised that Sallis was just in possession of a .45 caliber handgun" and "was actively selling narcotics." The same informant "advised that Sallis had done a shooting earlier in the month of October 2021 in the general area of Gable Street" and "had shot at another vehicle." Officer Ehlers matched the shooting described by the informant to an incident that occurred in the early morning hours of October 9, during which a witness described hearing six shots before seeing a

white SUV speeding down the street. Law enforcement located a "weapon/laser light attachment" and nine .45 caliber casings in the street. There were five bullet holes in a vehicle, and law enforcement believed that two of the fired bullets recovered from the vehicle came from the .45 caliber shell casings. Detectives obtained a video from October 8 showing Sallis sitting inside a vehicle and aiming at the camera what looked like a semi-automatic handgun with a light attachment.

The addendum also states that Sallis cannot possess firearms based on his felony convictions. Officer Ehlers also explained that "subjects involved in illegal firearm trafficking often store firearms inside vehicle" and "often use vehicles to transport firearms." Finally, it noted that the video from October 8 shows Sallis in possession of a firearm while inside a vehicle.

The warrant application included a document titled, "Informant's Attachment." It states, "I, Peace Officer J. Ehlers, received information from an informant whose name is: <u>Confidential Source 1</u>." It also states that the informant's name is confidential "because disclosure of informant's identity would: _X_ Endanger informant's safety; [and] _X_ Impair informant's future usefulness to law enforcement." Finally, the form provides reasons the informant is reliable with checks next to four statements:

> _X_ The informant is a concerned citizen who has been known by the above officer for _1_ week and who:
> _X_ Has no motivation to falsify the information
> _X_ Has otherwise demonstrated truthfulness. (State in the narrative the facts that led to this conclusion.)
> _X_ The information supplied by the informant in this investigation has been corroborated by law enforcement personnel. (Indicate in the narrative the corroborated information and how it was corroborated.)

The district court filled out a form titled, "Endorsement of Search Warrant Application," stating that it relied on Officer Ehlers's sworn testimony along with the statements and information in the application and the attachments to it. The form also includes checks next to the following statements:

> X_ A portion of the grounds for issuance of this search warrant is based upon a confidential informant who provided information to affiant and other investigating law enforcement officers.
> X_ I find from sworn testimony and/or the affiant's affidavit that the informant's information is reliable because: Informant's information was corroborated by information learned by officers via their own investigations and surveillance.
> X_ The information is found to justify probable cause and I therefore issue the warrant.

Law enforcement executed the search warrant one day after the court issued it and found a .45 caliber semi-automatic handgun loaded with a magazine containing .45 caliber ammunition and a plastic bag containing suspected marijuana in Sallis's apartment. Sallis was at the apartment the day of the search. After being informed of his *Miranda* rights, Sallis admitted to knowingly possessing a handgun.

The State charged Sallis with possession of a firearm as a felon and habitual offender. Sallis moved to suppress the evidence obtained during the search of his property, claiming the search warrant was not supported by probable cause. After the district court denied the motion, Sallis waived his right to a jury trial and proceeded to a bench trial on the stipulated minutes. The district court found Sallis guilty as charged and sentenced Sallis to a fifteen-year term of incarceration with a mandatory minimum of three years.

### II. Scope and Standard of Review.

"We review the district court's denial of a motion to suppress based on deprivation of a constitutional right de novo." *State v. Arrieta*, 998 N.W.2d 617, 620 (Iowa 2023). On de novo review, we independently evaluate the entire record but give weight to the district court's fact findings, although they do not bind us. *See id.*

### III. Discussion.

Sallis contends the district court should have suppressed the evidence discovered during the search of his residence and his girlfriend's vehicles because the search warrant was not supported by probable cause. He claims the application contained five defects: (1) untimely information, (2) an inadequate nexus between criminal activity and the places to be searched, (3) a conclusory statement by a confidential informant, (4) inadequate corroboration, and (5) an inadequate basis for determining the informant's credibility. We review each argument in turn.

In determining whether probable cause supports a warrant, "we review the information actually presented to the judge and determine whether the issuing judge had a substantial basis for concluding that probable cause existed." *State v. Harbach*, 3 N.W.3d 209, 217 (Iowa 2024) (citation omitted). Thus, the question is whether the information presented in the warrant application "would convince a person of reasonable prudence that evidence of a crime could be located at the place to be searched." *Id.*

Sallis first contends the application for a search warrant was untimely because it relied on information about a shooting that occurred three weeks earlier.

"Allegations of criminal conduct may be so distant in time as to provide no probable cause for a warrant." *State v. Randle*, 555 N.W.2d 666, 670 (Iowa 1996). But we will not find the information contained in a search warrant application is untimely based on the passage of time alone; "whether information is stale depends on the circumstances of the case." *State v. Gogg*, 561 N.W.2d 360, 367 (Iowa 1997). The relevant circumstances include:

> (1) the character of the crime (whether an isolated event or an ongoing activity), (2) the character of the criminal (nomadic or stable), (3) the nature of the thing to be seized (perishable, easily destroyed, not affixed and easily removable, or of enduring utility to the holder), and (4) the place to be searched (mere criminal forum of convenience or secure operational base).

*Id.* (internal citations omitted).

Although the application is based in part on the October 9 shooting and the October 8 video showing Sallis with a handgun, Officer Ehlers also stated that the confidential informant reported that Sallis was still in possession of a .45 caliber handgun in "the last 72 hours." The district court noted that it is reasonable to infer that possession of a firearm by a felon is an ongoing crime. Because the application was based on an ongoing crime and stated that Sallis possessed a handgun no more than three days earlier, the warrant was not based on stale information. *See id.* at 368 ("the six-day-old observations of the informant were not stale").

Sallis next contends the application failed to show a nexus between the criminal activity and the places to be searched. In rejecting this argument, the district court found that firearms and ammunition are not perishable items or easily destroyed and would be of enduring utility to Sallis. On this basis, the court

concluded that one could infer the items would be in the apartment that both Sallis and his girlfriend listed as their residence. The court also found it reasonable to infer that Sallis had access to the two vehicles registered to his girlfriend and parked at their residence.

We agree that the warrant application establishes a nexus between the criminal activity and the places to be searched. It is reasonable to infer that Sallis would keep the items in his residence based on their nature and the informant's statement that Sallis possessed the firearm three days before Officer Ehlers applied for a warrant. In addition, the October 8 video, Officer Ehlers's statement about illegal trafficking of firearms, the location of the girlfriend's vehicles at the residence she and Sallis shared, and the informant's statement that Sallis usually operated one of the vehicles provided probable cause for their search.

Sallis's final three challenges concern the information provided by the confidential informant. He argues that the application did not show the basis for the informant's knowledge that Sallis "had done a shooting," corroborate the information provided by the informant, or show the informant was credible. Because each of these factors impacts the others, we consider these arguments together. *See State v. Bishop*, 387 N.W.2d 554, 557 (Iowa 1986) (stating "[t]he informant's veracity and basis of knowledge are no longer separate and distinct considerations" since *Illinois v. Gates*, 462 U.S. 213 (1983), which "rejected the former two-pronged test for determining probable cause . . . in favor of a totality of the circumstances analysis"). Rather than invalidating a warrant for lack of probable cause based on a deficiency of a single factor, we consider the totality of

the factors because "a strong showing in one factor may compensate for the deficiency in another factor." *Id.*

When viewed together, the factors before the court that granted the search warrant provide a sufficient basis for determining the veracity of the informant's information. Although the statement about Sallis's involvement in the shooting does not provide the basis for the informant's knowledge, it did provide verifiable details about when ("earlier in the month of October 2021") and where ("in the general area of Gable Street") the shooting occurred. The informant also described what happened during the shooting, advising "that Sallis had shot at another vehicle." Officer Ehlers corroborated that information by matching it to an October 9 shooting involving the caliber of bullet that the informant alleged Sallis used. Officer Ehlers also located a video from one day before the shooting that showed Sallis in possession of a firearm inside a vehicle matching the description that a witness to the shooting gave of a vehicle that sped away from the scene. The vehicle also matched the description of a vehicle owned by Sallis's girlfriend, which the informant also described and claimed Sallis "usually operat[ed]." The informant also gave the name of Sallis's girlfriend and the address of their residence, which Officer Ehlers also corroborated. Finally, in addition to the corroboration, the application states that Officer Ehlers believed the informant was credible because there was no reason for the informant to lie.

Because probable cause supported the search warrant, we affirm the denial of Sallis's motion to suppress.

**AFFIRMED.**