# IN THE COURT OF APPEALS OF IOWA

No. 17-0359
Filed March 21, 2018

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**CHRIS AARON FRAKES,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Lee (South) County, John G. Linn (trial and sentencing), John M. Wright (motion to suppress), Michael J. Schilling (motion in limine), and Mary Ann Brown (revocation of deferred judgment and judgment entry), Judges.

A defendant appeals his convictions by jury trial for possession of methamphetamine, possession of marijuana with intent to deliver, and keeping a drug house. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Kyle P. Hanson and Tyler J. Buller, Assistant Attorneys General, for appellee.

Considered by Doyle, P.J., and Tabor and McDonald, JJ.

**TABOR, Judge.**

Chris Frakes believes evidence regarding "Pleasure Time Rentals", his "sex room" business venture, improperly prejudiced the jury in his trial for possession of methamphetamine, possession of marijuana with intent to deliver, and keeping a drug house. He also argues the search warrant was deficient and substantial evidence does not support two of his convictions. Because the search warrant was based on probable cause, and the law enforcement officer affiant did not intentionally or recklessly mislead the court, we reject Frakes's constitutional challenge. We further find Frakes did not preserve error on his substantial-evidence objection, but we address his alternative ineffective-assistance-of-counsel claim, concluding Frakes cannot show he was prejudiced by counsel's omission. Finally, because the district court placed appropriate limits on the testimony and exhibits relating to "Pleasure Time Rentals" and Frakes's financial matters, and that evidence was more probative than prejudicial, we decline to reverse on that basis.

## I. Facts and Prior Proceedings

On November 6, 2015, law enforcement officers executed a search warrant at Frakes's home. Officers based the warrant application on an anonymous tip received three months earlier and on the reports from a named informant familiar with Frakes's drug distribution.

While searching Frakes's home, officers discovered plastic baggies, scales, drug paraphernalia, a small quantity of marijuana, a trace amount of methamphetamine, large amounts of cash hidden in various places, and a basement filled with sex toys. Officers interviewed Frakes, who told them he did

not use marijuana but gave it to women in his home before engaging in sexual activity with them. Frakes also told officers about a defunct business venture in which he proposed to rent out a room in his house containing equipment used for sexual activity. Frakes said he closed the business six months before being arrested. The State charged Frakes with possession of methamphetamine with intent to deliver, possession of marijuana with intent to deliver, and keeping a drug house.

Following a pretrial motion to suppress, the case proceeded to a jury trial. The jury found Frakes guilty of possession of methamphetamine,[1] possession of marijuana with intent to deliver,[2] and keeping a drug house.[3] The district court granted Frakes a deferred judgment but after he violated his probation the court sentenced him to a term not to exceed five years imprisonment and several fines. Frakes now appeals his convictions.

## II. Analysis

### A. Motion to Suppress

Frakes contends the district court should have suppressed the evidence discovered from execution of the search warrant on his house because 1) the warrant lacked probable cause, and 2) the affiant-officer intentionally or recklessly misled the court in the warrant application.

When a motion to suppress involves state or federal constitutional grounds, our review is de novo. *See State v. Baldon*, 829 N.W.2d 785, 789 (Iowa 2013)

---

[1] Iowa Code § 124.41(5) (2015).
[2] Iowa Code § 124.410(1)(d).
[3] Iowa Code § 124.402(1)(e).

(analyzing Fourth Amendment of the U.S. Constitution and Article I, section 8 of the Iowa Constitution). We independently evaluate the totality of the circumstances as demonstrated by the entire record. *See id.* We consider both the evidence presented at the suppression hearing as well as the evidence presented at trial. *See State v. Carter*, 696 N.W.2d 31, 36 (Iowa 2005). "[W]e give deference to the factual findings of the district court due to its opportunity to evaluate the credibility of the witnesses but are not bound by such findings." *State v. Lane*, 726 N.W.2d 371, 377 (Iowa 2007).

On our review of probable cause to issue a search warrant, we "decide whether the issuing judge had a substantial basis for concluding probable cause existed." *State v. Gogg*, 561 N.W.2d 360, 363 (Iowa 1997). "[W]e do not independently determine probable cause." *State v. McNeal*, 867 N.W.2d 91, 100 (Iowa 2015). Probable cause exists when "a person of reasonable prudence would believe a crime was committed on the premises to be searched or evidence of a crime could be located there." *Gogg*, 561 N.W.2d at 363 (quoting *State v. Weir*, 414 N.W.2d 327, 330 (Iowa 1987)).

### 1. Probable Cause

In the search warrant application, Officer Chad Donaldson of the Lee County Sheriff's Department advised the court an unknown "citizen informant" had reported "an ongoing pattern of short term 'come and go traffic'" from Frakes's home, which the informant believed was drug-related activity. The tip dated from August 2015, about three months before the application.

Another informant, Cassie Underwood, reported she and her boyfriend, Christian Jay Jones, went to Frakes's home on October 30, 2015, and bought

methamphetamine. Underwood claimed to be working as a "middleman" for Frakes's drug sales—she purchased methamphetamine for others with money they provided. She further recalled working with Frakes to divide a large amount of methamphetamine into individual one-gram bags. She estimated she had helped weigh methamphetamine with Frakes on ten different occasions. On one occasion, they ended up with more than 300 bags. The affidavit does not state when this occurred. Underwood also said Frakes hid cash in various places in his home and kept records of drug transactions on his computer. Lee County authorities arrested Underwood and Jones at their home after they had bought the methamphetamine from Frakes. Jones had 1.4 grams of methamphetamine on his person; officers found another quarter gram in their home.

Frakes argues the warrant lacked probable cause because Officer Donaldson relied on a stale tip from an unknown "citizen informant" and information provided by Underwood, an informant Donaldson acknowledged was "not known for credibility" and had a motive to cast blame on Frakes in exchange for a more favorable outcome after she and Jones were arrested.

When considering an anonymous tip, "we recognize a rebuttable presumption that information imparted by a citizen informant is generally reliable." *McNeal*, 867 N.W.2d at 100. But, "an anonymous tip alone does not ordinarily contain sufficient indicia of reliability to provide probable cause." *Id.* at 100–101. A "significantly corroborated anonymous tip" is sufficient. *See id.* at 101. If the only evidence in the warrant application had been the anonymous tip and the unnamed informant's surmise that the traffic in and out of Frakes's home was drug-

related, we might end the inquiry here. But in this case, the affiant provided additional information.

A similar concern arises regarding the timeliness of the tip. "[P]robable cause does not require absolute proof that the contraband was in the place in question at the very moment the warrant was issued and executed," though ordinarily it "does not continue for an extended period of time". *State v. Paterno*, 309 N.W.2d 420, 424 (Iowa 1981). A "staleness issue is resolved by consideration of all the factors present in the particular situation." *Id.* at 423. Again, additional facts to support probable cause arose after the initial tip, much closer to the time of the warrant application, in the form of Underwood's report.

Officer Donaldson acknowledged Underwood's self-serving motive for providing information and her reputation for untruthfulness. But Donaldson also found Underwood credible in this instance because her statements were "against penal interests" and because they corroborated other information. Underwood admitted going to Frakes's home with Jones and buying methamphetamine. She was familiar with Frakes's distribution process and the location of his records. She also said she assisted Frakes in his sales on a continuing basis. Officers found her boyfriend, Jones, carrying methamphetamine. Underwood's description of Frakes's drug operation comports with the August tip about in-and-out traffic at the home and suggests a pattern of ongoing activity, rather than two isolated events. A person of reasonable prudence could deduce Frakes was conducting illegal drug activities from his home. The affidavit contained a substantial basis for the judge to find probable cause existed for the search.

### 2. Representation by Affiant-Officer

Frakes next argues Officer Donaldson misled the court in his application for the search warrant. Frakes bears the burden of establishing an intentional or reckless misrepresentation to a judicial officer issuing a search warrant.[4] *See Gogg*, 561 N.W.2d at 364 (citing *Paterno*, 309 N.W.2d at 425). We may consider all relevant facts and circumstances. *Id.* The affiant's conduct "must be more than mere negligence or mistake." *State v. McPhillips*, 580 N.W.2d 748, 751 (Iowa 1998). Reckless disregard can be proven either (1) "by showing directly that the affiant had serious doubts as to the veracity of an informant's statement" or (2) "from circumstances evincing 'obvious reasons to doubt the veracity' of the allegations." *State v. Niehaus*, 452 N.W.2d 184, 187 (Iowa 1990) (citations omitted). An omission of a material fact constitutes a misrepresentation only when the omitted information casts doubt on the existence of probable cause. *See id.*

Frakes argues Donaldson either intentionally or with reckless disregard for the truth omitted statements by Underwood that would have diminished her credibility or contradicted the basis she provided for probable cause. He points to Underwood's interview with Donaldson where she asserted 1) she last purchased drugs from Frakes "a week ago, probably" suggesting she was not at Frakes's house on October 30; 2) she was at home when Jones returned from Frakes's residence suggesting she had not accompanied Jones as she stated earlier; and

---

[4] Frakes's motion to suppress included the argument that Donaldson intentionally or recklessly omitted evidence such that the affidavit was false and misleading. Frakes renews this argument on appeal and briefly mentions the procedure set out in *Franks v. Delaware*, 438 U.S. 154 (1978). A *Franks* hearing allows a criminal defendant to challenge a search warrant by showing the affiant made a false statement either intentionally or with reckless disregard for the truth. *Franks*, 438 U.S. 154, 171. But, Frakes did not request a *Franks* hearing before the district court and does not now appear to argue he was deprived of one.

3) the most methamphetamine she had ever seen Frakes holding was "like four or five grams." While Underwood's loquacious interview narrative was unfocused at times, these statements do not cast doubt on the existence of probable cause of drug activity in Frakes's home. Underwood specifically said Frakes frequently *gave* her methamphetamine, and the last time she *purchased* drugs from him was about a week ago, which does not contradict her other assertions or suggest she was not at Frakes's home on the day in question. Her description of Jones kicking down a door when the police arrived at their home also does not diminish the other statements because it is not clear from the transcript exactly when this happened. Finally, in context, Underwood's statement about Frakes possessing "like four or five grams" referred to "whatever Jay picked up from him the other night." In an earlier answer, she told Officer Donaldson she had previously seen Frakes with a "chunk" of methamphetamine as big as "a frying pan."

Further, Donaldson acknowledged Underwood was "not known for credibility" but explained he believed her statements about Frakes because they were against her interests and corroborated other evidence. Donaldson knew Underwood hoped for leniency for her and Jones, but the interview transcript shows Donaldson declined to assist Jones and made no guarantees to Underwood. The circumstances do not demonstrate Donaldson had serious doubts about the veracity of Underwood's statements. As the district court noted, Underwood supplied specifics as to the quantity and location of drugs and sales documentation in the home, and her statements were consistent with other evidence in the record. The circumstances do not demonstrate any obvious

reason to doubt the veracity of the allegations. Therefore, we cannot find Officer Donaldson intentionally or recklessly misled the district court.

## B. Sufficiency of the Evidence

On appeal, Frakes attacks the "specific intent to deliver" element of the marijuana possession conviction[5] and the "substantial purpose" element of the keeping-a-drug-house conviction[6]. Frakes points out police officers discovered only 17.58 grams or 0.62 ounces of marijuana in his house, an amount consistent with personal use, rather than distribution. Frakes further argues the State produced no testimony that the substantial purpose of the residence was for the storage, possession, or sale of controlled substances. Frakes contends he preserved error by moving for judgment of acquittal after the conclusion of the State's case and at the end of the defense case. In the alternative, Frakes argues trial counsel was ineffective for failing to raise these issues.

At the close of the State's case, defense counsel stated, "We do not feel the evidence has been sufficient to establish each and every element of either of the three offenses of which Mr. Frakes is charged[.]" The State responded it had

---

[5] To find Frakes guilty of possession of marijuana with intent to deliver, the jury was required to find:
    1.     On or about November 6, 2015, the defendant knowingly possessed marijuana.
    2.     The defendant knew that the substance he possessed was marijuana.
    3.     The defendant possessed the marijuana with the intent to deliver.
[6] To find Frakes guilty of keeping a drug house, the jury was required to find:
    1.     On or about the 6th day of November, 2015, the defendant knowingly kept or permitted another to keep or maintain a premises.
    2.     The defendant knew a substantial purpose for the keeping or maintaining of such place was for the on-going storage, possession, use or sale of one or more controlled substances.

shown credible evidence on "each and every element." At the close of all evidence, Frakes renewed his motion "for all the reasons mentioned" previously.

A motion for judgment of acquittal will not preserve a sufficiency-of-the-evidence issue for review unless it identifies the specific elements of the crime for which the defense believes the evidence is lacking. *State v. Williams*, 695 N.W.2d 23, 27 (Iowa 2005) (citing *State v. Crone*, 545 N.W.2d 267, 270 (Iowa 1996)). Frakes's generic motion for judgment of acquittal did not preserve error on his appellate claim.

We therefore address Frakes's alternative argument that his trial attorney was ineffective for not making a more specific motion for judgment of acquittal. We review ineffective-assistance-of-counsel claims de novo. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). To prevail, Frakes must prove by a preponderance of the evidence that defense counsel breached an essential duty resulting in actual prejudice. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). If the proof is wanting on either element, the claim fails. *See State v. Thorndike*, 860 N.W.2d 316, 320 (Iowa 2015). On the prejudice prong, Frakes must show the attorney's mistake was "so serious as to deprive [the defendant] of a fair trial." *See Strickland*, 466 U.S. at 687. It is not enough to show the mistake could have conceivably influenced the trial's outcome. *Thorndike*, 860 N.W.2d at 320. Rather, Frakes must demonstrate but for counsel's omission, there was a reasonable probability of acquittal. *See id.* We often preserve such claims for postconviction-relief proceedings where the applicant may develop supporting facts. *See id.* at 319. But we may resolve the claims on direct appeal if the record is adequate. *Id.* In this case, the record is adequate to resolve the claim.

Frakes does not explain in briefing how he might have been prejudiced by his trial attorney's failure to make more specific motions to acquit. "Evidence is sufficient to withstand a motion for judgment of acquittal when, viewing the evidence in the light most favorable to the State and drawing all reasonable inferences in the State's favor, 'there is substantial evidence in the record to support a finding of the challenged element.'" *State v. Williams*, 695 N.W.2d 23, 28 (Iowa 2005) (quoting *State v. Reynolds*, 670 N.W.2d 405, 409 (Iowa 2003)).

On our review of the evidence presented at trial, we find no reasonable probability Frakes would have been acquitted had counsel lodged a more precise motion. Officers recovered 17.58 grams of marijuana in Frakes's home. Frakes admitted to law enforcement, and again on the stand, that he possessed marijuana and knew the substance to be marijuana. He also testified he shared the marijuana with three women. An officer testified Frakes claimed he did not use marijuana himself but gave it to women to "calm them down" before they engaged in sexual encounters in Frakes's basement. The jury was instructed "delivery" means "actual, constructive, or attempted transfer of a substance from one person to another." *See* Iowa Code § 124.101(7); *State v. Cartee*, 577 N.W.2d 649, 652 (Iowa 1998) (holding small-scale "sharing of marijuana" met definition of delivery). A jury would be free to reject the argument that the 17.58 grams of marijuana found in the house was more consistent with personal use than distribution and could reasonably infer Frakes had the specific intent to transfer it to another. Substantial evidence in the record supports that conclusion.

The evidence also supports the jury's verdict that Frakes maintained his house for the substantial purpose of storing, possessing, using, or selling

controlled substances. Law enforcement witnesses testified Frakes was the only occupant of the house. They recovered baggies consistent with drug distribution, scales, drug paraphernalia, and large amounts of cash that had been hidden through the house. They also found one-half gram of methamphetamine in a small baggie. Law enforcement witnesses testified the evidence was consistent with drug distribution. Frakes also told officers he gave marijuana to women in his home. A reasonable jury could infer from the physical evidence and Frakes's statements that drug distribution was a substantial purpose of the house. Accordingly, Frakes does not make the required showing that but for counsel's omissions, there was a reasonable probability he would have been acquitted.

### C. Admissibility of Evidence Regarding Sex-Related Business

Frakes objects to the district court's admission of testimony, documents, and photographs related to his business venture called "Pleasure Time Rentals." The business model involved renting out a room in his house for customers to conduct sexual activity with various "sex toys" stocked by Frakes. He advertised the rental room as the "Pleasure Time Den." Frakes also objected to admission of his tax returns, an arbitration agreement, and documents from a lawsuit in which Frakes was a party. According to Frakes, none of this evidence was material to the drug charges; instead it "only served to shock the jury and place the defendant in a bad light."

We review rulings on the admissibility of evidence for an abuse of discretion. *State v. Thomas*, 766 N.W.2d 263, 271 (Iowa Ct. App. 2009). "An abuse of discretion occurs when the trial court exercises its discretion on grounds or for reasons clearly untenable or to an extent clearly unreasonable." *Id.* (internal

citations omitted).  "We presume prejudice from the admission of irrelevant evidence" unless the record shows a lack of prejudice.  *Id.* (internal citations omitted).  Evidence is relevant if it "has any tendency to make a fact more or less probable than it would be without the evidence" and the fact "is of consequence in determining the action."  Iowa R. Evid. 5.401.  The trial court may exclude relevant evidence if its "probative value is substantially outweighed by the danger of . . . unfair prejudice."  Iowa R. Evid. 5.403.

Frakes moved in limine to exclude photographs and testimony about "Pleasure Time Rentals" and the "sex room."  The district court partially granted Frakes's motion, finding some sexually explicit photographs were cumulative, but allowed admission of a limited number of photographs of the room as a whole, noting evidence demonstrating the existence of the "sex room" tended to support the State's theory of the case.[7]  The court continued throughout trial to overrule defense objections to the evidence as irrelevant and more prejudicial than probative.

During trial, the State offered two photographs of Frakes's bedroom broadly showing a bed, swings, and other bondage devices.  The photographs also feature baggies, drug paraphernalia, and ductwork in the basement where police officers discovered a large amount of cash.  The photographs corroborated officer testimony about what they found in the house.  The State also offered into evidence a business card advertising "Pleasure Time Rentals" that Frakes admitted handing

---

[7] The district court noted neither party provided the actual photographs for the motion in limine, only descriptions.  Based on the descriptions, the court excluded photographs of a magazine entitled "Fetish," "anal plugs," "Candy G-Strings," and a rubber "sexual doll," but permitted photographs of the room as a whole.

out and printouts from the website Frakes established for the business, including a list of rental rates for the "sex room."

### 1. Relevance

On appeal, Frakes insists the evidence was not relevant because he had closed the business before his arrest, removing all the items from the rental room to his own bedroom in the basement. He also argues there is no evidence he earned any money from the venture. Nonetheless, a law enforcement officer testified Frakes said he gave marijuana to women upstairs to "calm them down" before conducting sexual activities in the basement. The presence of drug paraphernalia and baggies in the basement also suggests the activities continued downstairs. Although Frakes himself testified he shuttered the "sex room" business, the admitted evidence was probative of ongoing and inter-related drug and sexual activity in Frakes's home. In particular, the challenged evidence strengthens the State's case that Frakes had an intent to deliver marijuana to others as a prelude to or concurrent with the use of the "sex room." The trial court did not abuse its discretion in finding this evidence relevant.

The district court also allowed into evidence, over Frakes's objections, his tax returns, an arbitration agreement from a former employer indicating he was to be paid in stock, and a lawsuit judgment against Frakes. The tax returns showed Frakes stopped filing federal taxes in 2012; accompanying testimony indicated Frakes stopped working regularly several years back. Law enforcement officers indicated Frakes's only source of income appeared to be "sell[ing] items here and there" in what was described as a "cash business type thing." In 2012, Frakes claimed a negative income of $12,422. The lawsuit documentation showed a

judgment against Frakes of more than $5,700, which he testified he never paid. Frakes argues this evidence was not relevant to the State's case, and its prejudicial effect outweighed any probative value. But all the foregoing evidence showed Frakes had no legitimate source of income and therefore made it more likely the large sums of cash found hidden throughout the house were proceeds of drug sales. The court did not abuse its discretion in allowing this evidence into the record.

### 2. Probative versus prejudicial effect

Frakes also argues the evidence was more prejudicial than probative. *See* Iowa R. Evid. 5.403 (stating relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence"). This rule is a balancing test where the district court must measure the danger of unfair prejudice, confusion of the issues, or misleading the jury against the probative value of the evidence; if the scale tips toward the unfair prejudice categories, exclusion is appropriate. *See State v. Richards*, 879 N.W.2d 140, 145 n.1 (Iowa 2016). Evidence is unfairly prejudicial if it "appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or triggers other mainsprings of human action [that] may cause a jury to base its decision on something other than the established propositions in the case." *State v. Neiderbach*, 837 N.W.2d 180, 202 (Iowa 2013) (internal quotations omitted).

Our review is somewhat hampered because the trial court did not articulate how it balanced the evidence's probative value against the prejudicial impact.

Frakes argues the evidence shocked the jurors and placed him in a bad light; he was concerned they would view him as "kinky." Even if the evidence presented cast Frakes in a bad light, it nevertheless had strong probative value. Frakes's promotion of a "sex room"—complete with marijuana to relax the participants—supported the State's allegation that a substantial purpose of his house was to possess, use, or distribute controlled substances. The district court reduced the danger of unfair prejudice by excluding the more sexually explicit and cumulative photographs. *See State v. Putman*, 848 N.W.2d 1, 15–16 (Iowa 2014). Likewise, the prejudicial effect of Frakes's financial papers did not substantially outweigh their probative value. The State was entitled to show Frakes had no legitimate source of income to explain the large amounts of cash hidden through his house. The district court did not abuse its discretion in allowing any of the disputed evidence.

**AFFIRMED.**